**Maudelle GRIFFITH, Independent Executrix of the Estate of J.L. Griffith, Appellant,**

v.

**Morris L. PORTER, Appellee.**

No. 12–89–00148–CV.

Court of Appeals of Texas, Tyler.

Sept. 20, 1991.

Frank Elder, III, Longview, for appellant.

Gillett Sheppard, Longview, for appellee.

RAMEY, Chief Justice.

Maudelle Griffith, the widow of J.L. Griffith, appeals from the trial court's award of damages, attorney's fees, and statutory penalties under the Deceptive Trade Practices Act, TEX.BUS. AND COM.CODE ANN. § 17.41 *et seq.*[1] We affirm.

Morris L. Porter and his wife, appellee, purchased a commercial building, the old First National Bank Building in Henderson, from J.L. and Maudelle Griffith, appellant, in early 1979. A promissory note payable in ten annual installments was a part of the consideration for the purchase. Appellee timely paid five of those installments. Before the sixth installment became due, appellee wrote appellant[2] to advise that he would be unable to make further installment payments. The Griffiths did not respond to this default notice. They executed a power of attorney authorizing their son, Herbert E. Griffith, to attempt to secure a new purchaser for the property. After the due date for the sixth installment had passed, appellee contacted the Griffiths to inform them that he had found a third party purchaser for the building. The Griffiths agreed to the proposed re-sale. In preparation for closing the re-sale, appellee's real estate agent, Louis Colombo, acting on instructions from the appellant, contacted Herbert Griffith to ascertain the promissory note "pay-off" due the Griffiths to secure their release of the lien on the building.

After the re-sale of the building, appellee determined that this payoff sum resulted in an over-payment to the Griffiths under the terms and prior payments on the promissory note. Appellee's attempts thereafter to recover the over-payment to the appellant were unsuccessful. This suit was then filed. Following a bench trial, the trial court rendered judgment for the appellee on his DTPA claims.

Appellant presents eight points of error. In her first point, she asserts that the trial court erred in finding that the appellee was a consumer under the DTPA. By her second point she likewise contends that the trial court erred in finding that Mr. Porter was a consumer, because the purchase of the building was not the basis of his cause of action.

■ Our standard of review is limited in this case. No findings of fact or conclusions of law were filed or requested. There is a statement of facts. In the absence of findings and conclusions, it is implied that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984). There is no factual insufficiency assignment. Therefore, "[i]f there is some evidence to support the judgment, it must stand, and only that evidence most favorable to the issue is to be considered." *Lemons v. EMW Manufacturing Company*, 747 S.W.2d 372, 373 (Tex.1988).

■ Appellant initially cites *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980), and *Thompson v. First Austin Company*, 572 S.W.2d 80 (Tex.Civ.App.— Ft. Worth 1978, writ ref'd n.r.e.), for the proposition that the appellee removed himself from the status of consumer by claiming that his damages arose out of an over-payment on the note and by seeking to recover in the capacity of a borrower. Appellant also contends that the over-payment complained of occurred after the sale, and therefore, it is a bar to recovery under the DTPA. There is, however, no requirement that defendant's conduct occur simultaneously with the sale of the goods. *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *Teague v. Bandy*, 793 S.W.2d 50, 54 (Tex.App.—Austin 1990, writ den'd).

■ In *Riverside*, the Supreme Court held that borrowing money is not an acquisition of goods and services under the DTPA. The Supreme Court has since specifically limited *Riverside* to its facts. *La Sara Grain v. First National Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex.1984).

---

**1.** All references to the DTPA in this opinion refer to this Act.

**2.** J.L. Griffith had died since the 1979 purchase.

A borrower can qualify as a consumer as long as his purpose in the transaction is to acquire goods or services. *La Sara Grain*, 673 S.W.2d at 566, 567; *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex.1982).

In the *Knight* case, the plaintiff sought to purchase a dump truck which was financed by a company which, among other services, had provided the seller of the dump truck with the sales contract containing the language found to be violative of the DTPA. The plaintiff in *Knight* alleged DTPA violations against both the seller and the lender. The Supreme Court held that since the extension of credit was incident to the sale of the goods, and the conduct of the party who extended the credit was so "inextricably intertwined" with the sale, both the seller and the lender were liable to the plaintiff. *Knight*, 627 S.W.2d at 388–9.

Like the plaintiff in *Knight*, the appellee's purpose in this transaction was to purchase "goods" from the Griffiths, to wit, a building. *See* TEX.BUS. AND COM.CODE ANN. § 17.45(1). However, unlike the parties in *Knight*, the appellee here had not sought the services of a third party lender, because the Griffiths had provided the financing. This arrangement is more "inextricably intertwined" with the objective of the subject transaction than the financing arrangements in *Knight*. Because there is evidence in the record that appellee's purpose in this transaction was to purchase goods, we find that the trial court correctly determined that the appellee was a consumer for the purposes of the DTPA and that the goods purchased in the instant case formed the basis of the appellee's recovery. Appellant's first and second points of error are overruled.

In appellant's third point of error, she alleges that the trial court erred in finding that the contract between the parties remained in effect after the due date for the sixth installment. Appellant argues, and this Court agrees, that where there is a repudiation by the vendee, the vendor is *entitled* to an immediate rescission of the contract. *Whiteside v. Bell*,

162 Tex. 411, 347 S.W.2d 568, 570 (1961). Notice of a party's intent not to perform under a contract, however, does not, of itself, constitute an automatic contract rescission. *Greenwall Theatrical Circuit Co. v. Markowitz*, 97 Tex. 479, 79 S.W. 1069, 1071 (1904). If the repudiation is not accepted by the other party, the contract is kept alive for the benefit of both parties; the non-repudiating party, like the repudiating party, remains subject to all obligations under the contract. *Vise v. Foster*, 247 S.W.2d 274, 280–81 (Tex.Civ.App.— Waco 1952, writ ref'd n.r.e.). The non-repudiating party may lose his right to rescind the contract, if, with knowledge of the repudiation, he ratifies the contract by some action or conduct. *Payne v. Baldock*, 287 S.W.2d 507, 509 (Tex.Civ.App.— Eastland 1956, writ ref'd n.r.e.). Therefore, the non-repudiating party must either rescind or retain his former rights under the contract; he may not do both. *Id.*

As long as the non-repudiating party has not materially changed his position in reliance upon an earlier notice of default, a prior repudiation may be retracted by notification of the non-repudiating party that there will be performance. *Valdina Farms v. Brown, Beasley & Assoc.*, 733 S.W.2d 688, 692 (Tex.App.—San Antonio 1987, no writ); *Helsley v. Anderson*, 519 S.W.2d 130, 133 (Tex.Civ.App.—Dallas 1975, no writ); *Kingsberry v. Phillips Petroleum Co.*, 315 S.W.2d 561, 568 (Tex.Civ. App.—Austin 1958, writ ref'd n.r.e.).

In this case, there is evidence that the appellee, in repudiating, expressed a clear intent not to make further installment payments; however, there is nothing in the statement of facts that establishes that the Griffiths took any action amounting to a rescission of the contract after appellee's repudiation. It is also clear that, after the repudiation, appellee gave notice to the appellant that he had a buyer for the property, and he requested the pay-off amount on the note. We hold that through such communication appellant was clearly notified that appellee retracted his earlier repudiation and would continue to perform under the original contractual agreement. There-

fore, there is evidence to support the finding that the contract between the parties was not rescinded by the appellee's repudiation. Appellant's third point of error is overruled.

By her fourth point of error, appellant asserts that the statutory penalties under DTPA § 17.50 should not have been awarded, because there was no evidence that (1) appellant or her agent's conduct was a producing cause of appellee's damages, or that (2) any of her conduct, or that of her son, was unconscionable.

█ Appellant concedes in her brief that appellee sustained some damage ($1,257.02) as a result of her son's overstatement of the net balance on appellee's promissory note. Without determining the precise amount of appellee's damages, there was evidence that Herbert Griffith's misrepresentation of the monies due the Griffiths was a producing cause of some damage to appellee.

█ The second prong of the point of error is more complex: was Herbert Griffith's conduct in this transaction unconscionable? DTPA § 17.45(5) defines unconscionable activity as an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

These are the only two means of engaging in unconscionable conduct under the DTPA; each stands alone. *Chastain v. Koonce,* 700 S.W.2d 579 (Tex.1985). Both contain the proof standard that the course of action must be to a gross degree. *Chastain* defines "gross" as "glaringly noticeable, flagrant, complete and unmitigated". *Chastain,* 700 S.W.2d at 583. There is no requirement that Herbert Griffith "intended to take advantage of the consumer or acted with knowledge or conscious indifference." *Id.*

█ In this case, the appellee failed to prove that appellant, or her son Herbert, possessed superior knowledge, background or training in real estate transactions to the appellee. In fact, the record shows that the appellee, although primarily an Alaskan fisherman whose permanent residence was La Feria, Texas, had made a number of real estate investments before purchasing the subject building. Furthermore, he was represented at all relevant times by a licensed real estate broker. Appellee had full knowledge of his installment payments to the Griffiths on the promissory note. Appellee chose not to be present at the closing and failed to disclose to his agent the amount of his installment payments.

On the other hand, Herbert Griffith testified that he had no experience in real estate; he said that he was in the swimming pool sales business, and that the only real estate transaction in which he had ever been involved was the purchase of his home. Likewise, there is no evidence that the Griffiths had ever dealt in real estate. Herbert Griffith, like appellee, had substantially a high school education and testified that he did not know the meaning of the word "pay-off"; he said that the $19,-000 figure he gave appellee's real estate representative was the amount his parents had agreed to accept as the purchase price for the building, based upon an appraisal he had secured. We find that there was no evidence of appellant's conduct reaching the level of gross unfairness at the inception of the re-sale transaction.

The Supreme Court has held, however, that under sub-paragraph (A), whether a consumer has been overreached to a grossly unfair degree "should be determined *by examining the entire transaction* ..." (emphasis added). *Chastain,* 700 S.W.2d at 583; *see Flenniken,* 661 S.W.2d at 707. The re-sale transaction was closed on June 24, 1985. The money owed by the Griffiths to the appellee resulting from the son's undenied overstatement of the pay-off was never refunded to the appellee, nor has any attempt been made by the Griffiths to adjust the overcharge of appellee under his installment note as of the time of the resale. There is evidence of a number of

telephone and letter requests by appellee's real estate agent and, subsequently, his attorney to the Griffiths and their son seeking the monies owed appellee. Suit was filed to recover the money on April 28, 1986; the case came on for trial February 21, 1989, apparently three years and eight months after the re-sale was closed. The Griffiths have retained the proceeds of the over-payment, and there is no indication that an adjustment would have been made absent legal process requiring appellant to do so.

In the absence of findings of fact and conclusions of law, we must infer that the trial court found that the intransigence of the appellant in withholding the over-payment resulting from the admittedly erroneous representation of the balance due under the appellee's installment note was grossly unfair conduct, and, therefore, an unconscionable course of action, under § 17.45(5)(A) of the DTPA. There is some evidence to support this finding. Appellant's fourth point of error is overruled.

By the fifth point of error, appellant asserts that the court incorrectly calculated appellee's damages, if any, and erred in awarding attorneys' fees, because there was no evidence that the Griffiths or their son committed any acts in violation of the DTPA. The Judgment recites that appellee sustained $3,531.54 in actual damages. The balance due on the promissory note on the date of the closing of the re-sale was $15,486.46. The remainder after subtracting that figure from the over-stated balance due of $19,000 is $3,513.54.[3] TEX.BUS. AND COM.CODE ANN. § 17.50(b)(3) authorizes a recovery of any money which may have been acquired by the defendant in violation of the DTPA. We have heretofore held that appellant's acquisition of the aforesaid $3,513.54, and the refusal to return it, were in violation of the DTPA. Though actual damages sustained by a plaintiff may be calculated in various ways to reach different results, under the DTPA a consumer may recover the greatest amount which he has alleged and proved to be caused by his adversary's conduct. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.). Attorney's fees are mandatory for a prevailing consumer under the DTPA. TEX.BUS. AND COM. CODE ANN. § 17.50(d).

In this point, appellant again argues that there was no DTPA violation, because there was no evidence of any obligation to the appellee after he repudiated the agreement. We have heretofore considered and disagreed with this contention. Appellant's fifth point of error is overruled.

Appellant's sixth, seventh, and eighth points are predicated upon the same argument. The sixth point asserts that appellee's suit is groundless, brought in bad faith, and that she should be awarded her attorney's fees. The seventh point of error complains that appellant's motion for judgment should have been granted after appellee rested, because there was no evidence that appellant violated the DTPA. By her eighth point of error, appellant asserts that the trial court should have granted her motion to vacate the judgment or, alternatively, her motion for new trial. Appellant's argument on each point is predicated solely upon the identical contention that the agreement between the parties had been repudiated and abandoned by appellee's notification to appellant that he would be unable to pay the sixth installment of his promissory note. As mentioned, we have already rejected this contention. Appellant's sixth, seventh, and eighth points of error are overruled.

The trial court's judgment is affirmed.

COLLEY, J., not participating.

---

3. The trial court apparently transposed the "3" and "1" digits, resulting in an $18 error.