Melvin **BARKER**, Individually and as Heir to the Estate of Kirsten Barker, Deceased, Appellant,

v.

Ronald Henry **ROELKE**, Elroy G. Roelke, State Farm Fire & Casualty Company, and State Farm Mutual Automobile Insurance Company, Appellees.

No. 11–01–00270–CV.

Court of Appeals of Texas, Eastland.

March 20, 2003.

David Kennedy, Law Office of David M. Kennedy, Sherman, for appellant.

Melinda Burke, Joseph W. Spence, Shannon, Gracey, Ratliff & Miller, Fort Worth, Stephen W. Johnson, Reuben R. Rios, Johnson & Sylvan, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

### W.G. ARNOT, III, Chief Justice.

This appeal involves an effort to set aside release agreements executed to settle tort claims arising from a serious automobile accident. A vehicle operated by Jackie Jay collided with a vehicle operated by Ronald Henry Roelke on February 13, 1995, in Sherman. Jackie Jay's children, Kirsten Barker and Ryan Jay, were passengers in her vehicle at the time of the collision. Jackie Jay and her two children were all seriously injured as a result of the collision. Kirsten died from the injuries she received in the accident.

Appellant, Melvin Barker, is Kirsten's surviving father and Jackie Jay's former husband. He initiated the underlying proceedings by filing suit against Ronald Roelke asserting wrongful death and survival claims arising from Kirsten's death. Appellant did not assert a wrongful death claim on behalf of Jackie Jay in the action. Ronald Jay, Ryan's father and Jackie Jay's husband at the time of the accident, intervened in appellant's suit against Ronald Roelke seeking damages resulting from the injuries suffered by Ryan. Appellant and Ronald Jay subsequently added Elroy G. Roelke as a defendant to the action for the purpose of asserting a negligent entrustment claim against him based on the allegation that he was the owner of the vehicle operated by Ronald Roelke. Jack-

ie Jay did not file suit against either of the Roelkes within the two-year period following the accident either for her own physical injuries or for damages arising from the death of Kirsten and the severe injuries received by Ryan.

The Roelkes were insured by two insurance policies issued by State Farm Mutual Automobile Insurance Company, consisting of an automobile liability policy and an excess (umbrella) policy. The automobile liability policy provided policy limits of $100,000 per claimant and $300,000 per accident. The excess policy provided umbrella coverage of $1,000,000. Appellant forwarded a *Stowers*[1] demand to the Roelkes' attorney on January 27, 1997, seeking to settle his claims for an amount within policy limits. See *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 848–49 (Tex.1994)(outlining the elements of a *Stowers* demand). Ronald Jay also forwarded a *Stowers* demand to the Roelkes' attorney. The Roelkes' attorney responded to appellant's and Ronald Jay's settlement demands immediately following the two-year anniversary of the accident in a letter dated February 14, 1997. The response letter stated as follows:

I have received each of your settlement demands in the above-referenced case, copies of which I have attached (without exhibits) to this correspondence. You have both demanded the $100,000.00 per person policy limits under the applicable automobile liability policy and $1,000,000.00 policy limits under the excess (umbrella) policy.

On behalf of my clients, Ronald Henry Roelke and Elroy Gene Roelke, and on behalf of State Farm, I accept each of your $100,000.00 demands under the ap-

---

1. *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547–48 (Tex. Comm'n App.1929, holding approved)

plicable automobile liability policy. In addition, I am authorized to pay the full $1,000,000.00 policy limits under the applicable excess (umbrella) insurance policy to all Plaintiffs, Intervenors and potential claimants/Plaintiffs/Intervenors in full and final settlement of this lawsuit and all potential claims arising out of the accident made the basis of this lawsuit against Ronald Henry Roelke, Elroy Gene Roelke and State Farm.

Both of you have demanded the policy limits under the excess (umbrella) insurance policy. Accordingly, it will be necessary for you [Melvin Barker and Ronald Jay] both to reach an agreement with regard to the division of the policy limits under the excess (umbrella) insurance policy. In addition, a Guardian Ad Litem must be appointed to represent the interests of Ryan Jay. Such Guardian Ad Litem must fully approve the terms of the settlement and division of the policy limits of the excess (umbrella) insurance policy. Further, although it is our position that the statute of limitations has run as to any claims she may have against the Roelkes or State Farm with regard to the accident made the basis of this lawsuit, Jackie Jay must also sign a full release and approve the settlement as to her son, Ryan Jay.

I will need to know in the next seven days if you both can come to an agreement with regard to the division of the policy limits under the excess (umbrella) insurance policy of $1,000,000.00. Also, please give me a call immediately to discuss the appointment of the Guardian Ad Litem and other issues with regard to the settlement of this case. Also, I want to stress again that the $1,200,000.00 which the Roelkes, by and through State Farm, have agreed to tender in this case is contingent upon a full release by all Intervenors, Plaintiffs and potential claimants/Plaintiffs/Interve-

nors, including and not limited to Jackie Jay. Independent of her potential individual claim, Jackie Jay is also a necessary party to any settlement on behalf of Ryan Jay, as she is Ryan's natural mother and legal guardian, and is also a necessary party to any settlement for the estate of Kirsten Barker, as she is a statutory beneficiary of Kirsten Barker.

Appellant and Ronald Jay each accepted the respective offers of $100,000 in settlement under the automobile liability policy. They also agreed to accept the offer of $1,000,000 under the excess insurance policy to collectively resolve their claims. Appellant and Ronald Jay submitted the issue of apportioning the $1,000,000 settlement proceeds to the trial court for determination at a hearing which occurred on April 3, 1997. The trial court ultimately apportioned $400,000 of the $1,000,000 settlement proceeds to appellant in a letter dated June 19, 1997. Appellant therefore received a total of $500,000.00 in settlement for the survival and wrongful death claims that he asserted.

Jackie Jay testified at the apportionment hearing conducted on April 3, 1997. Several of the questions which were directed to her concerned her competency to forego pursuing her claims arising from the accident. She testified that she was aware of her potential claims and that she agreed to the settlement which had been reached by the Roelkes with appellant and Ronald Jay. The trial court later entered an order entitled "Order for Determination of Competency" on April 25, 1997, wherein the court declared that "Jackie Jay is competent in all respects to enter agreements with regard to the settlement and resolution of this lawsuit."

Appellant executed two written settlement agreements releasing the Roelkes from claims arising from the accident.

Appellant executed the first release on March 28, 1997, upon receiving $100,000 paid under the automobile liability policy. He executed the second release on July 2, 1997, upon receiving the $400,000 apportioned to him by the trial court on June 19, 1997, from the $1,000,000 tendered under the excess policy. Both of the releases provided for appellant's release of any and all claims arising from the accident which he might have against the Roelkes and their insurer.

On July 9, 1997, a plea in intervention was filed on behalf of Jackie Jay by Karen Coleman.[2] Jackie Jay's original pleading only sought a recovery against the Roelkes for her personal injuries as well as for her claims arising from Kirsten's death and Ryan's physical injuries. The filing of the intervention more than two years after the date of the accident was premised on the allegation that Jackie Jay was not competent to act for herself as a result of the injuries she sustained in the accident.

Jackie Jay filed an amended pleading on or about September 19, 1997, which added a claim against appellant concerning the $400,000 which the trial court apportioned to him after the April 3, 1997, hearing. Jackie Jay alleged that appellant breached a duty which he purportedly owed to her as another wrongful death beneficiary by not including her as a party to his action against the Roelkes.[3] Jackie Jay's pleading also sought to restrain appellant's use of the $400,000 he received on July 2, 1997, during the pendency of the case.

Jackie Jay filed a subsequent pleading on May 24, 1999, which greatly expanded the scope of the action. This amended pleading added several additional parties including: (1) appellant's attorney and his law firm; (2) the Roelkes' attorney and their law firm; (3) State Farm Mutual Automobile Insurance Company; (4) State Farm Fire & Casualty Company; and (5) the executors of the estate James Michael Thompson, Deceased.[4] Jackie Jay alleged that these parties were aware of her lack of capacity and that they conspired to prevent her from receiving any portion of the insurance proceeds which were paid to appellant and Ronald Jay.

Jackie Jay ultimately reached a settlement with the Roelkes, their attorneys, and their insurers in March of 2000.[5] Jackie Jay received the sum of $5,500,000 under the terms of the settlement agreement in consideration for her release of all of the claims she potentially possessed against the Roelkes, their attorneys, and their insurers. Jackie Jay's receipt of $5,500,000 under the terms of the subsequent settlement is the impetus for this appeal. Appellant amended his pleadings

---

2. The action remained pending because appellant had not yet dismissed his claims in the action as of July 9, 1997, even though he had received the remaining settlement proceeds payable to him on July 2, 1997. Karen Coleman initially filed the suit as next friend of Jackie Jay. The probate court subsequently named Jimi Lou Coleman as Jackie Jay's guardian on May 5, 1998, whereupon Jimi Lou Coleman replaced Karen Coleman as Jackie Jay's representative.

3. See *Trostle v. Trostle*, 77 S.W.3d 908 (Tex. App.-Amarillo 2002, no pet'n), for a recent discussion of the duty, if any, owed by one wrongful death beneficiary to another wrong-

ful death beneficiary with respect to instituting a wrongful death action.

4. James Michael Thompson served as Ronald Jay's attorney of record during the settlement negotiations conducted with the Roelkes. He also represented Ronald Jay at the apportionment hearing. Thompson died during the pendency of the underlying proceedings.

5. The settlement agreement which Jackie Jay executed specifically identifies State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company as released parties.

in March of 2000 to include claims seeking to rescind the written releases he executed in 1997 in favor of the Roelkes and their representatives. He directed his initial claim for rescission against only the Roelkes. Appellant later added State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company as parties in April of 2000. Appellant asserted that he was entitled to rescission based on several grounds. He also pursued claims of conversion, breach of contract, fraud, and civil conspiracy against appellees (the Roelkes, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company).

Appellees filed traditional motions for summary judgment which urged that all of appellant's claims were barred by the releases he executed. The motions additionally asserted that appellant was precluded from seeking to rescind the releases under the theories of ratification and waiver. The trial court granted summary judgment for appellees on all claims asserted against them by appellant. Appellant brings a single appellate issue complaining that the trial court should not have granted summary judgment in favor of appellees. He has briefed seven sub-issues outlining his grounds for attacking the summary judgment. We affirm.

 The trial court's order granting summary judgment does not specify the grounds upon which it is based. When a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chemical Company v. Francis*, 46

S.W.3d 237, 242 (Tex.2001); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). With respect to a motion for traditional summary judgment, the question is whether the movant has met its burden of showing that there are no genuine issues of material fact and that judgment should be granted as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985). All evidence favorable to the non-movant must be taken as true, and all reasonable doubts must be resolved in favor of the non-movant. *Nixon v. Mr. Property Management Company, Inc.*, supra. In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

Appellant asserts in Sub-issue No.1a that the summary judgment evidence raised a fact issue with respect to appellees' affirmative defense of release. He contends that the two written releases which he executed are only part of a "[g]lobal [s]ettlement" which he entered with Jackie Jay, Ronald Jay, the Roelkes, and the Roelkes' insurer. Appellant asserts that Jackie Jay agreed to release all of her potential claims arising from the accident as part of the global settlement. He further asserts that the releases are unenforceable against him if Jackie Jay's claims were not released at the same time. Appellant relies on the contractual elements of mutual assent and party capacity in advancing this argument.[6] With respect to his mutual assent allegation, appellant argues that the releases do not reflect a

---

6. Appellant additionally asserts in his argument under Sub-issue No. 1a that he is entitled to seek the rescission of the releases on the grounds of fraud and mutual mistake. We address these affirmative defenses in our discussion of Sub-issue No. 1b.

"meeting of the minds" because they do not include provisions addressing Jackie Jay's simultaneous release of claims. Appellant additionally asserts that the issue concerning Jackie Jay's capacity to agree to the global settlement constitutes a fact question which precludes the enforcement of the releases by summary judgment.

■ Jackie Jay's status as a party to the releases which appellant executed is a threshold issue to appellant's claims of lack of mutual assent and capacity. We conclude as a matter of law that Jackie Jay was not a party to the releases. Appellant bases his allegation regarding Jackie Jay's status as a party to the releases on the portions of the Roelkes' attorney's letter of February 14, 1997, which discuss Jackie Jay's consent to the proposed settlement. Appellant's contention is therefore based on an alleged agreement or understanding which is not expressly set out in the releases. Both of the releases contain a provision which states as follows:

> This document contains the entire agreement between the Parties with regard to the settlement of Plaintiff's claims against Defendants and there are no other understandings or agreements, verbal or otherwise, among the Parties except those expressly stated in this document.[7]

This provision is typically referred to as an integration or merger clause. The parties' execution of a written agreement presumes that all prior negotiations and agreements relating to the transaction have been merged into it and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence. See *Smith v. Smith,* 794 S.W.2d 823, 827–28, (Tex.App.-Dallas 1990, no writ). This rule is particularly applicable where the written contract contains an integration clause. See *Smith v. Smith,* supra. The inclusion of the integration clause in each of the releases prevents appellant from relying on extraneous agreements or understandings to assert that Jackie Jay was a party to the releases which he executed.

■ Since Jackie Jay was not a party to the releases, her possible lack of capacity could not serve as an independent ground for invalidating the releases. Moreover, even if Jackie Jay were a party to the releases, only she or her representative would have standing to assert that the releases were voidable as a result of her lack of capacity. See *Swain v. Wiley College,* 74 S.W.3d 143, 146 (Tex.App.-Texarkana 2002, no pet'n). Appellant's mutual assent argument is also misplaced given the fact that the parties executed a written contract with the benefit of counsel. When an unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515, 518 (Tex.1968). In the usual case, the instrument alone will be deemed to express the intention of the parties, for it is objective, not subjective, intent that controls. *City of Pinehurst v. Spooner Addition Water Company,* supra. In the case of an express contract, the parties' mutual agreement is expressly stated in the contract. *Bank of El Paso v. T.O. Stanley Boot Co., Inc.,* 809 S.W.2d 279, 284 (Tex.App.-El Paso 1991), *aff'd in part, rev'd in part on other grounds,* 847 S.W.2d 218 (Tex.1992).

---

7. The releases designate "the Parties" as appellant, Ronald Henry Roelke, and Elroy G. Roelke.

Appellant contends in Sub-issue No. 1b that the summary judgment evidence raised a fact question with respect to his attempt to rescind the releases. Rescission is an equitable remedy that operates to set aside a contract that is legally valid but is marred by fraud or mistake or, for some other reason, the court must set it aside to avoid unjust enrichment. See *Humphrey v. Camelot Retirement Community*, 893 S.W.2d 55, 59 (Tex.App.-Corpus Christi 1994, no writ). The decision whether to grant rescission lies within the trial court's sound discretion. See *Texas Capital Securities, Inc. v. J.D. Sandefer, III*, 58 S.W.3d 760, 774 (Tex.App.-Houston [1st Dist.] 2001, pet'n den'd); *Humphrey v. Camelot Retirement Community*, supra; *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 366 (Tex.App.-Fort Worth 1990, no writ). The right to rescind a contract may be lost by inaction and conduct showing an affirmation of the contract after a knowledge of the facts which are grounds for rescission. *Guerrero v. Hagco Building Systems, Inc.*, 733 S.W.2d 635, 638 (Tex.App.-San Antonio 1987, no writ); *Payne v. Baldock*, 287 S.W.2d 507, 509 (Tex.Civ.App.-Eastland 1956, writ ref'd n.r.e.).

Appellant is seeking to rescind the releases by asserting mutual mistake of fact and fraud. As a contract, a release is subject to avoidance on these grounds. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990). Under the doctrine of mutual mistake, an agreement may be avoided where the parties contracted under a misconception or mistake of a material fact. *Williams v. Glash*, supra at 264. The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-upon exchange. See *de Monet v. PERA*, 877 S.W.2d 352, 357 (Tex.App.-Dallas 1994, no writ)(citing RESTATE-

MENT (SECOND) OF CONTRACTS § 152 (1981)). The party seeking to avoid the contract has the burden of proof to show mutual mistake. See *de Monet v. PERA*, supra at 357. As noted by the court in *Williams:*

> The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release.

\* \* \*

The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements. However, in narrow circumstances a party may raise a fact issue for the trier of fact to set aside a release under the doctrine of mutual mistake. *Williams v. Glash*, supra at 264–65. An error in predicting a future fact known to be uncertain is not the kind of mistake which will relieve a party from a contract. See *Green v. Morris*, 43 S.W.3d 604, 607 (Tex.App.-Waco 2001, no pet'n).

Appellees have responded to appellant's claim for rescission by asserting the affirmative defenses of ratification and waiver. Ratification occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it. See *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex. App.-Houston [14th Dist.] 1990, no writ). Ratification may either be express or implied from a course of conduct. Once a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract. See *Spellman v. American Universal Investment Company*, 687 S.W.2d 27, 29 (Tex.App.-Corpus Christi

1984, writ ref'd n.r.e.). Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract. See *Old Republic Insurance Company, Inc. v. Fuller*, 919 S.W.2d 726, 728 (Tex.App.-Texarkana 1996, writ den'd). Whether a party has ratified a contract may be determined as a matter of law if the evidence is not controverted or is incontrovertible. See *Old Republic Insurance Company, Inc. v. Fuller*, supra at 728.

With respect to appellant's mutual mistake of fact allegation, he contends that the parties were mistaken as to Jackie Jay's competency and its implication on her ability to effectively consent to the settlement reached between appellant, Ronald Jay, and appellees. Appellees assert that appellant ratified the releases by continuing to seek the enforcement of the settlements reflected by the execution of the release for almost three years after Jackie Jay filed her original intervention. Appellant responds to appellees' contention by arguing that he could not have ratified the releases until the issues of Jackie Jay's consent and competency were resolved by the courts.

■ It would appear that most allegations of mutual mistake of fact involve objective matters which can easily be confirmed or refuted. The facts in this appeal are somewhat unique because questions concerning a person's competency to give effective consent to a contract are matters of subjective inquiry. Despite the subjectivity of the allegedly mistaken fact, we disagree with appellant's position that he was entitled to wait without consequence for a judicial determination of the alleged mistake. The RESTATEMENT (SECOND) OF CONTRACTS § 380(2) (1981) provides:

> The power of a party to avoid a contract for mistake ... is lost if after he *knows or has reason to know* of the mistake ... he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance. (Emphasis added)

We have not found any Texas cases which have either adopted or rejected the application of Section 380(2) with respect to a party's power to set aside a contract for mutual mistake. In the absence of controlling authority to the contrary, we adopt the Restatement's standard of "knows or has reason to know." We therefore examine the summary judgment evidence to determine if and when appellant knew or had reason to know that the parties were mistaken with respect to Jackie Jay's competency.

■ Attorneys for the parties took the deposition of William Bruce Jones, Ph.D., on February 27, 1998. Dr. Jones is a neuropsychologist who performed an evaluation of Jackie Jay in January of 1998. He testified that his examination of Jackie Jay indicated that the brain injuries which she suffered in the accident resulted in severe cognitive impairment which precluded her ability to make decisions of a legal nature. The record further indicates that the probate court for Grayson County appointed a guardian for Jackie Jay in May of 1998 based upon the court's finding of her incapacity by clear and convincing evidence.[8] As noted in *Mobil Oil Corporation v. Floyd*, 810 S.W.2d 321, 324 (Tex. App.-Beaumont 1991, orig. proceeding), the appointment of a guardian creates a presumption of incompetency in other proceedings. Dr. James T. Russell, M.D.,

---

8. Ronald Jay filed a previous application for appointment of guardian for Jackie Jay on December 12, 1995. However, he subsequently withdrew the guardianship application.

advised the probate court in the guardianship proceeding that Jackie Jay suffered a brain injury as a result of the accident which resulted in severe incapacity as to reasoning abilities, short-term memory, judgment, and resistance to undue influences. These matters demonstrate that appellant had "reason to know" of the parties' alleged mistake regarding Jackie Jay's competency in 1998. Appellant, however, did not attempt to set aside the releases until March of 2000. He remained in possession of the funds which he had received by virtue of the settlements and continued seeking to enforce the settlements during this period. The record therefore conclusively establishes that appellant ratified the releases by manifesting an intent to affirm them long after he had reason to know of the parties' possible mistake.

Appellant also seeks to rescind the releases based on an allegation of fraud. He contends that Jackie Jay and James Michael Thompson (Ronald Jay's attorney) fraudulently induced him to enter into the settlement reflected by the releases by making false statements regarding Jackie Jay's competency and consent to the settlement.[9] The elements of common-law fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. See *Johnson & Higgins*

*of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998). As was the case with his mutual mistake contentions, appellant asserts that he could not have ratified the releases without a judicial determination of his fraud allegations against Jackie Jay and Ronald Jay's attorney. Unlike the "knows or has reason to know" standard applicable to allegations of mutual mistake, the Restatement provides that a party's power to avoid a contract based on a fraudulent misrepresentation is not lost until the party "knows of the misrepresentation." Section 380(2). We therefore review the summary judgment evidence to determine if appellant manifested an intent to affirm the releases after knowing of Jackie Jay's and Thompson's purported fraudulent misrepresentations.

Jackie Jay was deposed on two occasions in December 1997 and January 1998. She was questioned extensively during the depositions about her and Thompson's alleged fraud. She stated that Thompson advised her as follows with respect to the settlement proposed at the April 3, 1997, hearing:

> I just remember [Thompson] telling me that it was best for me to go along if the insurance ... if the insurance asked if I was going to sue, and he told me to say no and that, later on down the line, he would try to get me some type of a—I don't know what the word is called—compensation from [the accident].

She also answered in the affirmative to the following question:

> You'll agree with me that if you got up there [at the April 3, 1997, hearing] and you told us you understood, that you were doing all these things, and, in fact,

---

9. Appellant does not assert that Thompson was a party to the releases. We have determined in this appeal that Jackie Jay was not a party to the releases. Some authorities suggest that a contract cannot be set aside be-cause of the fraud of a third person in which the other party to the contract is not involved. See 14 TEX. JUR. 3D *Contracts* § 86 (1997). We do not reach the applicability of this rule.

you knew that you didn't understand but you were just giving us the answers that you thought we wanted to hear, that you were being deceitful?

Jackie Jay's deposition testimony establishes that appellant knew of Jackie Jay's and Thompson's alleged misrepresentations in January 1998. Therefore, the record conclusively establishes that appellant ratified the releases after knowing of Jackie Jay's and Thompson's alleged misrepresentations for more than two years before seeking to set aside the releases.

 Appellant asserts in Sub-issue No. 1c that the doctrine of quasi-estoppel bars appellees from asserting the defense of ratification. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. See *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex.2000). Appellant bases his quasi-estoppel argument on a letter written by appellees' attorney in March 1998 to counsel for appellant. The letter outlined counsel's assessment of the effect which Jackie Jay's claims would have on the settlements reached with appellant and Ronald Jay. Appellant contends that this letter had the effect of suspending his settlement with the Roelkes pending a judicial determination of Jackie Jay's claims. We disagree with appellant's contention that the letter suspended his settlement with the Roelkes. The letter was written several months after appellant had executed the releases and received all of the money which he was entitled to receive under the settlements. Additionally, the letter was written after appellant had already ratified the releases. Furthermore, we decline to hold that a letter written to opposing counsel addressing the effect of another party's claims on a pending dispute constitutes the "taking of a position" for quasi-estoppel purposes. Moreover,

even if one treats the letter as a repudiation of the settlement by appellees, appellant's ratification of the contract prevented him from seeking to rescind the contract. See *Griffith v. Porter*, 817 S.W.2d 131, 135 (Tex.App.-Tyler 1991, no writ); *Payne v. Baldock*, supra at 509.

 Appellant's Sub-issue No. 1d alleges deficiencies in appellees' assertion of the defense of accord and satisfaction. The accord and satisfaction defense rests upon a contract, express or implied, in which the parties agree to the discharge of an existing obligation by means of a lesser payment tendered and accepted. See *Lopez v. Munoz, Hockema & Reed, L.L.P.*, supra at 863. A few cases have specifically addressed the defense of accord and satisfaction with respect to the settlement of tort claims. See *Marsalis v. Garre*, 391 S.W.2d 522 (Tex.Civ.App.-Amarillo 1965, writ ref'd n.r.e.). Appellees asserted the defense of accord and satisfaction in their motions for summary judgment in addition to asserting release as a defense. The defense of release in the context of settling of a tort claim involves the same elements as an accord and satisfaction in a contractual setting. Our resolution of appellees' defense of release is therefore applicable to the assertion of the defense of accord and satisfaction.

 Appellant argues in Sub-issue No. 1e that appellees' summary judgment grounds of release and ratification do not defeat his claims for conversion and breach of contract. Relying upon his global settlement allegation, he contends that the $5,500,000 which appellees paid to Jackie Jay in settlement of her claims should have been paid to him. Appellant advances this argument even though some portion of this sum obviously compensated Jackie Jay for claims not released in the releases which he executed, including the claim for her own personal injuries and

her claim against appellees regarding the manner in which her claim was handled. Appellant's conversion and breach of contract claims are dependent upon his allegation that Jackie Jay was a party to the releases which he executed. Our rejection of this allegation also defeats his conversion and breach of contract claims. Appellant released all claims which he possessed against the Roelkes in consideration for the sum of $500,000. His receipt of this sum from appellees conclusively establishes that they did not breach the terms of the release agreements or convert any property to which appellant was entitled.

Appellant argues in Sub-issue No. 1f that appellees' summary judgment grounds of release and ratification do not defeat his claims of civil conspiracy and fraud which he has asserted against appellees. He contends that appellees are liable for Jackie Jay's fraud because they paid her money after having knowledge of her allegedly fraudulent conduct. Appellant further alleges that appellees' representations as to the amount of insurance benefits available to satisfy his claims became false when appellees paid additional amounts to Jackie Jay. Appellant's civil conspiracy and fraud claims are also dependent upon his allegation that Jackie Jay was a party to the releases he executed.

Finally, appellant argues in Sub-issue No. 1g that the releases do not release appellee State Farm Fire & Casualty Company from liability. The releases do not specifically identify State Farm Fire & Casualty Company. However, the releases state that appellant released appellee State Farm Mutual Automobile Insurance Company and each of its:

[P]artnerships, corporations, or professional associations with which [it has] been affiliated ... as well as any and all persons, firms, organizations, subsidiaries, affiliates, partners, predecessors and successors in interest, assigns, or corporations in privity with [it].

The record establishes that State Farm Fire & Casualty Company is affiliated with State Farm Mutual Automobile Insurance Company. We note in this regard that appellant has collectively referred to these two companies as "State Farm" throughout his pleadings and briefs. Appellant's sole appellate issue and each of its subparts are overruled.

The judgment of the trial court is affirmed.