**Affirmed and Memorandum Opinion filed December 17, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00018-CV

---

### TENDEKA, INC., Appellant

### V.

### NINE ENERGY SERVICE LLC, Appellee

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2014-52578**

---

## MEMORANDUM OPINION

In this breach of contract case Tendeka, Inc. appeals a judgment following a bench trial. In two issues Tendeka argues (1) the trial court erred when it concluded that Tendeka repudiated the contract between the parties; and in the alternative (2) if the trial court correctly concluded Tendeka repudiated the contract, the trial court erred in failing to conclude the repudiation was either excused or retracted. Concluding there is sufficient evidence to support the trial court's findings, we affirm the trial court's judgment.

BACKGROUND

Tendeka manufactures and sells a tool known as a swellable packer that is used in horizontal oil wells. The packer swells when it comes into contact with water but allows oil to flow by the packer. This tool is used to segment horizontal wells to allow hydraulic fracturing in specific locations. A packer is made of metal and rubber; the rubber has a limited shelf-life and begins to degrade over time. Nine Energy focused on the completion phase of development once the well is drilled and was a purchaser of packers.

Nine Energy operated as Northern States Completions (NSC) until February 2013. Sometime in 2012, Northern States began purchasing packers from Tendeka. In February 2013 Northern States merged into Nine Energy.[1] On October 25, 2013, Tendeka and Nine Energy entered into an agreement ("the October Agreement") in which "the parties agreed that, in return for [Tendeka]'s agreement to a $3,000.00 unit price, [Nine Energy] would assure the annual purchase of not fewer than 3,000 [packers]."[2] Paul Butero, Chief Executive Officer of Nine Energy in 2013 and Kenneth Miller, vice president of Tendeka in 2013, were the primary negotiators involved in the agreement between the parties. Butero testified that there were three components to the agreement between Nine Energy and Tendeka. Those components included (1) a negotiated price, (2) consignment, and (3) payment terms.

With regard to consignment, Nine Energy purchased packers on consignment from vendors; when a packer was placed in the well Nine Energy would notify the vendor to invoice Nine Energy for the packer. The packers were being used in wells located in North Dakota. The parties operated under this consignment arrangement

---

[1] For purposes of this opinion we will refer to appellee as "Nine Energy."

[2] Before trial the trial court granted a partial summary judgment in which it interpreted the agreement between the parties. Trial proceeded with this unchallenged interpretation.

before the date of the October Agreement and continued to operate under this arrangement afterward.

With regard to pricing, before the October Agreement, price was negotiated on a weekly and monthly basis. At that time Nine Energy was paying $3,700 per packer. The October Agreement lowered the price to $3,000. Sometime between the start of the October Agreement and June 9, 2014, Tendeka lowered the price of the packers sold to Nine Energy to $2,800 each.

On June 9, 2014, almost eight months after entering into the October Agreement, Miller sent a letter ("the June Letter") to Butero stating as follows:

> I have tried to contact you several times over the past weeks to discuss this in person. It has come to the point in our relationship that we realize Nine Energy has opted to utilize one vendor in North Dakota or at the very least not Tendeka as a Swell Packer supplier. We are disappointed that it has come to this despite having lowered our prices to a level that we were told was competitive. This has not resulted in any additional work to Tendeka and instead simply resulted in large levels of stock manufactured for Nine Energy. Also it has created competitive intensity with Nine Energy clients impacting market pricing which has done no one any favors.
>
> Currently we are supplying no packers to NSC and would like to make a clean break from the past distribution model. Tendeka would like all of the unused packers returned to us as to preserve their integrity to be run in future wells (they are currently being stored outdoors).
>
> We will be invoicing for packers not on hand as per what is returned to us. In the future we will provide packers if needed for $3000 per packer and they will be invoiced at the time of delivery to NSC.

Nine Energy considered the June Letter to be a refusal to abide by the pricing, consignment, and payment terms of the October Agreement. Butero responded to the June Letter by instructing Miller to "make arrangements to have your packers picked up." Tendeka picked up its packers after Butero's instruction to do so.

3

One month after sending the June Letter, on July 10, 2014, Miller sent another letter to Butero "reminding" Butero of Nine Energy's "minimum purchase obligation" based on the October Agreement. The July Letter noted that Nine Energy had purchased 1,923 packers as of the date of the letter. The letter further stated that if the "guaranteed 3,000 volume" was not met, packers would be priced at $3,700 each rather than $3,000.

Miller testified that he and John Crooks were primarily responsible for Tendeka's relationship with Nine Energy. John Crooks worked at Tendeka as a salesperson and was primarily responsible for day-to-day interactions with Nine Energy. Before the October Agreement the price of packers fluctuated week to week but was higher than $3,000 per packer, up to $3,700 per packer.

In late 2013, after the date of the October Agreement, Crooks offered to sell packers for $2,800 per unit with no volume commitment. According to Miller Crooks was authorized to make that offer. Miller called the June Letter the "breakup letter" because, in his opinion, Nine Energy was not honoring its volume commitment at that time. Miller admitted that at the time he sent the June Letter no one at Nine Energy had told him they would not meet the volume commitment. Miller testified that the June Letter changed the price of the packers, the consignment terms, and when payment would be required. After Miller sent the June Letter Tendeka began selling packers to Nine Energy's customers.

Rory Barbot, co-founder of Norther States Completions, which became a subsidiary of Nine Energy in 2013, testified that in Nine Energy's dealings with Tendeka they were shipped packers on consignment, agreed on a price in advance, and re-negotiated the price from time to time. Barbot also testified that before the October Agreement Nine Energy paid $3,700 per packer; after the October Agreement Nine Energy paid $3,000 per packer. Barbot testified there was never a

volume commitment tied to the $3,000 price.

In December 2013 Tendeka dropped the price to $2,800 per packer. Miller testified that Crooks, Tendeka's salesperson, initiated the lower price and was authorized to do so. Barbot's understanding of the June Letter was that Tendeka wanted to cancel the consignment arrangement, change the price per packer, and change the payment arrangements. The June Letter "fundamentally changed" the way Nine Energy had been doing business with Tendeka. Barbot never told anyone at Tendeka that they would not purchase more packers from Tendeka.

In reviewing the June Letter, Ann Fox, Nine Energy's Chief Executive Officer at the time of trial, testified that she interpreted the term "clean break" to mean that Tendeka sought to end the consignment arrangement that was previously in place. After receipt of the June Letter Nine Energy did not conduct further business with Tendeka.

Pearson, Tendeka's Chief Financial Officer, testified that Tendeka never "terminate[d] the contract." Pearson testified that the June Letter was intended to end the consignment arrangement, not the entire contract. Tendeka wanted to end the consignment arrangement because packers were being stored outside and were being destroyed by the elements. Tendeka picked up the packers in North Dakota and stored them at a facility a short distance away. Tendeka did not reduce its price below $3,000 in exchange for any volume commitment from Nine Energy. Pearson testified that Nine Energy did not breach the contract until October 24, 2014 because they had until that date to purchase 3,000 packers. No representative of Nine Energy ever communicated to Tendeka that Nine Energy would not buy any more packers during the contract period. Pearson testified that the June Letter changed the consignment terms and raised the price per packer by $200. At that time he testified there was no reason to believe Nine Energy would not meet the volume commitment.

On September 15, 2014, more than one month before the one-year contract would have ended, Tendeka filed its original petition alleging breach of contract, quantum valebant, and negligent misrepresentation. Tendeka alleged that it lowered its price for packers from $3,700 to $3,000 in exchange for Nine Energy's commitment to purchase 3,000 packers over the course of a year. Tendeka alleged that Nine Energy requested the further discount to $2,800 per unit to which Tendeka agreed. Tendeka alleged that Nine Energy purchased and paid for 1,923 packers but ceased using Tendeka's packers on hand and ceased ordering more packers "by the second quarter of 2014." Tendeka further alleged that Nine Energy was storing packers outside in harsh conditions in North Dakota. In its answer Nine Energy asserted repudiation of the agreement as an affirmative defense.

After a bench trial, the trial court rendered judgment for Tendeka for $36,400[3] in damages plus attorneys' fees. The trial court also signed detailed findings of fact and conclusions of law including the following findings pertinent to this appeal:

> 1. The parties reached an agreement on or about October 25, 2013 under which Plaintiff agreed to sell "standard Bakken packers" to defendant for a discounted price in return for Defendant's agreement to purchase not fewer than 3,000 units within one year from the date of the agreement.
>
> 2. The parties initially agreed that Defendant's price for a "standard Bakken packer" would be $3,000.00.
>
> 3. The parties subsequently agreed that Defendant's price for a "standard Bakken packer" would be $2,800.00.
>
> 4. The parties did not agree that Defendant would purchase " standard Bakken packers" exclusively from Plaintiff.
>
> *****
>
> 12. On or about June 9, 2014, Plaintiff repudiated the agreement

---

[3] This damage amount reflects the trial court's finding of the value of the packers that were damaged while being stored outdoors in North Dakota. No party challenges that finding.

between the parties.

The trial court also included the following conclusion of law:

> 11. Plaintiff's repudiation relieved Defendant from further obligation to purchase a minimum annual volume of "standard Bakken packers" from Plaintiff during the remainder of the original term.

In its first issue on appeal Tendeka argues the trial court erred in finding that Tendeka repudiated the contract. In its second issue Tendeka argues that if there was sufficient evidence to support the trial court's finding that Tendeka repudiated the contract, the trial court erred in concluding that the repudiation was either excused or retracted.

**Standard of Review**

In its issues on appeal Tendeka asserts the trial court erred in making certain findings of fact and failing to find other facts. Following a bench trial, we treat these issues as challenges to the legal and factual sufficiency of the evidence.

We review the trial court's decision for legal and factual sufficiency of the evidence using the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a

7

mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A party attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof must show that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party challenges the legal sufficiency of the evidence on a finding on which it did not bear the burden of proof, the party must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011); *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

In reviewing factual sufficiency, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When a party attacks the factual sufficiency of an adverse finding on which it bore the burden of proof, it must establish that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Burton v. Prince*, 577 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2019, no pet.). When a party challenges the factual sufficiency of the evidence supporting a finding on which it did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Mar. Overseas Corp.*, 971 S.W.2d at 407; *Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913, 919 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

We apply these standards mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the factfinder's findings. *See City of Keller*, 168 S.W.3d at 819, 822; *2900 Smith*, 301 S.W.3d at 745. When, as here, there is a complete reporter's record of the trial, the trial court's findings of fact will not be disturbed on appeal if there is any evidence of probative force to support them. *See Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

**Applicable Law**

Texas Courts apply the Uniform Commercial Code to contracts for the sale of goods even if the parties characterize the claim as a common law breach of contract or breach of warranty case. *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 840 (S.D. Tex. 2013); *see also Courey Int'l v. Designer Floors of Texas, Inc.*, No. 03-09-00059-CV, 2010 WL 143420, *3 (Tex. App.—Austin Jan. 15, 2010, no writ), citing Tex. Bus. & Com. Code Ann. § 2.102; *Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.) ("Contracts relating to the sale of goods are governed by article two of the [UCC], adopted in Texas as chapter two of the business and commerce code."). The agreement between Tendeka and Nine Energy was a contract for the sale of goods governed by the UCC.

The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See Texas Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 814 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Because Nine Energy asserted repudiation as an affirmative defense, Nine Energy had the burden of proving that Tendeka unconditionally refused to perform the contract. *See New York*

9

*Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 216 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

## I.      The trial court did not err in determining that Tendeka repudiated the agreement between the parties.

In its first issue Tendeka argues that the trial court erred in concluding that Tendeka repudiated the contract. Tendeka argues the evidence does not support the trial court's finding that Tendeka refused to perform in June 2014.

We begin our analysis with the parties' agreement as found by the trial court. The trial court found that on October 25, 2013, Tendeka and Nine Energy entered into an agreement in which "the parties agreed that, in return for [Tendeka]'s agreement to a $3,000.00 unit price, [Nine Energy] would assure the annual purchase of not fewer than 3,000 [packers]." Therefore, the existence of a valid contract was established. No party challenged this finding on appeal.

Tendeka challenges the sufficiency of the evidence to support the trial court's finding of fact number twelve, in which the court found, "On or about June 9, 2014, Plaintiff repudiated the agreement between the parties." To constitute a repudiation, a party to a contract must have absolutely and unconditionally refused to perform the contract without just excuse. *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). The refusal to perform must be unconditional and the renunciation of the contract must be complete. *Id*. Repudiation can result from action that reasonably indicates a rejection of the continuing obligation. Tex. Bus. & Com. Code Ann. § 2.610. cmt. 2.

We review the record to determine if the evidence supports the trial court's finding that Tendeka rejected its continuing obligation under the contract. The record reflects the contract between the parties had three main components: (1) price, (2) consignment, and (3) payment terms. On its face, the June Letter changed the price

10

of packers from $2,800 to $3,000, canceled the consignment terms, and required immediate payment rather than invoicing when the packers were used. Miller, Tendeka's representative, testified that the June Letter changed the price of the packers, the consignment terms and when payment would be required. Barbot, Nine Energy's representative, also testified that the June Letter changed each of these components of the contract. Pearson and Fox maintained that the June Letter only changed the consignment arrangement, not the price and payment terms of the contract. That evidence, however, is contradicted by the June Letter and the testimony of Miller and Barbot. As the fact finder the trial court resolved any conflicting evidence in favor of a finding of repudiation by Tendeka.

Applying the appropriate standards of review of the trial court's finding that Tendeka repudiated the contract, we find sufficient evidence in the record that Nine Energy met its burden to show the affirmative defense of repudiation. Furthermore, the finding of repudiation is not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule Tendeka's first issue.

## II.    The trial court did not err in failing to find that Tendeka's repudiation was excused.

In its second issue Tendeka argues that even if the June Letter represented a repudiation, it was excused. The trial court did not make a finding that Tendeka's repudiation was excused. Because Tendeka bore the burden of proof on this issue, it must establish on appeal that the evidence conclusively established all vital facts to support excuse of Tendeka's repudiation. *See Dow Chem.*, 46 S.W.3d at 241. Tendeka argues that its repudiation was justified by Nine Energy's failure to purchase 3,000 packers within the year term of the contract. In other words, Tendeka argues that Nine Energy repudiated the contract by failing to abide by its volume commitment.

11

When a party repudiates a contract, the non-repudiating party is entitled to an immediate rescission of the contract. *See Griffith v. Porter*, 817 S.W.2d 131, 135 (Tex. App.—Tyler 1991, no writ). Notice of intent not to perform under a contract, however, does not of itself constitute an automatic rescission. *Id*. If the repudiation is not accepted by the other party, the contract remains in effect for the benefit of both parties. *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ).

Tendeka argues that Nine Energy repudiated the contract by failing to abide by a volume commitment as early as November 2013 and that Nine Energy's repudiation excused Tendeka's later repudiation. The record reflects, however, that the parties continued to conduct business until June 2014. Nine Energy's alleged refusal to abide by a volume commitment did not show that Nine Energy rejected its continuing obligation under the contract. *See El Paso Prod. Co.*, 112 S.W.3d at 621. Tendeka concedes that Nine Energy bought at least 1,923 packers in the first six months of the contract. (6 RR 23) Not only does the record fail to reflect that Nine Energy repudiated the contract, it does not reflect that Tendeka accepted the repudiation at that time. In fact, Tendeka instead agreed to continue selling packers to Nine Energy for the lower price of $2,800.

Because the evidence does not support Tendeka's assertion that its repudiation was excused Tendeka has failed to show excuse as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. Furthermore, considering all of the evidence, Tendeka has failed to show the trial court's failure to find excuse was against the great weight and preponderance of the evidence.

## III. The trial court did not err in failing to find that Tendeka's repudiation was retracted.

Also in Tendeka's second issue it argues that, assuming the June Letter

12

repudiated the October Agreement, Tendeka promptly issued a retraction. On July 10, 2014, Miller sent the following letter to Butero:

> Thanks for your e-mail, a disappointing outcome to say the least, nevertheless we wish you well in all future business. After inspecting the packers returned from your Williston Facility there are 13 that are damaged and cannot be utilized. We will be invoicing for those packers.
>
> Also we would like to remind you of the minimum purchase obligation based on your e-mail of October 25, 2013 accepting our offer of $3000/packer for a minimum purchase of 3000 units based on your RFQ October 3, 2013.
>
> Nine Energy have [sic] currently purchased 1,923 packers to date at this reduced pricing level. We thought it prudent to bring to your attention that if the guaranteed 3,000 volume is not achieved the pricing on all the packers purchased at the lower price point based on the volumes indicated by Nine Energy will revert to the prior pricing of $3,700 and we will invoice Nine Energy for this price differential on all packers sold in that period.

Tendeka argues the above letter acted as a retraction of its June Letter repudiating the contract.

Because the trial court did not make a finding of retraction, to prevail on this issue, Tendeka must establish that the evidence conclusively established all vital facts to support a finding of retraction. *See Dow Chem. Co.*, 46 S.W.3d at 241. Under Texas law, repudiation gives the non-repudiating party the option to treat the repudiation as a breach or ignore it and await the agreed upon time of performance. *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999). The non-repudiating party must do one or the other; it cannot do both. *Bumb v. InterComp Techs., L.L.C.*, 64 S.W.3d 123, 125 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Until the repudiating party's next performance is due it can retract the repudiation unless the aggrieved party has since the repudiation cancelled, materially changed its position, or otherwise indicated that it considers the

13

repudiation final. Tex. Bus. & Com. Code Ann. § 2.611. As long as the non-repudiating party has not materially changed its position in reliance upon an earlier notice of default, a prior repudiation may be retracted by notification of the non-repudiating party that there will be performance. *Griffith*, 817 S.W.2d at 135.

The record in this case does not support a retraction of repudiation by Tendeka. Butero testified that Nine Energy treated the June Letter as a repudiation of the agreement and acted accordingly. Nine Energy materially changed its position in reliance on Tendeka's repudiation. Therefore, Tendeka could not retract its repudiation. *See id.*

Because the evidence does not support Tendeka's assertion that it retracted its repudiation of the agreement Tendeka has failed to show retraction as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. Furthermore, Tendeka has not established that the trial court's failure to find retraction was against the great weight and preponderance of the evidence. We overrule Tendeka's second issue.

## CONCLUSION

Having overruled Tendeka's issues on appeal we affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Wise, Zimmerer, and Spain (J. Spain concurring without opinion).

14