**TRANSCONTINENTAL REALTY INVESTORS, INC.,**
Appellant,

v.

**The JOHN T. LUPTON TRUST, Henry Billingsley, Lucy Billingsley, Crow–Billingsley Hutton Branch # 1 Ltd., Crow–Billingsley Midway Road South A, Ltd., and Crow–Billingsley 544/Carrollton, Ltd., Appellees.**

**No. 05–06–00151–CV.**

Court of Appeals of Texas,
Dallas.

May 29, 2009.

---

Lawrence J. Friedman, James Robert Krause, Carter Boisvert, Ernest Walter Leonard, Friedman & Feiger, L.L.P., Dallas, for Appellant.

Tod B. Edel, David Anderson, Carrington Coleman Sloman & Blumenthal, L.L.P., Dallas, Bradley M. Gordon, James David Brown, Winstead Sechrest & Minick, P.C., Dallas, for Appellees.

Before Justices BRIDGES, FRANCIS, and WHITTINGTON.[1]

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

## OPINION

Opinion by Justice BRIDGES.

Transcontinental Realty Investors, Inc. (TCI) appeals the trial court's judgment in favor of the John T. Lupton trust (the Trust), Henry Billingsley, Lucy Billingsley, Crow–Billingsley Hutton Branch # 1, Ltd., Crow–Billingsley Midway Road South A, Ltd., and Crow–Billingsley 544/Carrollton, Ltd. (the Billingsley Defendants). The trial court's final judgment incorporated two summary judgments, one in favor of the Trust and one in favor of the Billingsley Defendants. Because we conclude there are no genuine issues of material fact on TCI's claims, we affirm the trial court's judgment.

### BACKGROUND

The claims in this lawsuit arise out of TCI's desire to purchase unimproved real property owned by the Trust in Irving, Texas. On May 1, 2002, TCI and the Trust entered into a written contract of sale, under which TCI would purchase the property from the Trust for $9 million (the Original Contract). The Original Contract provided for initial earnest money of $100,000 and a closing date of June 30, 2002. The Original Contract's closing date was extended by written amendment several times without incident, and TCI paid a total of $350,000 in earnest money. TCI's claims arise out of its final attempt to extend the closing date for purchase of the property. The Trust sold the property to the Billingsley Defendants instead, and this lawsuit ensued.

TCI alleges two different oral agreements, one relevant to its breach of contract claim against the Trust, and one relevant to its fraud and negligent misrepresentation claims against the Billingsley Defendants. The first oral agreement TCI alleges was between TCI and the Trust. TCI alleges that on April 25, 2003, the Trust offered to extend the closing date for two weeks for an additional earnest money payment of $200,000 (the Trust Oral Agreement). TCI alleges it accepted this offer, and the Trust agreed to execute a written amendment reflecting these terms, but instead the Trust sold the property to the Billingsley Defendants. The Trust Oral Agreement is the basis for TCI's breach of contract claim against the Trust.

The second oral agreement TCI alleges was between TCI's representative Gene Phillips and Henry Billingsley. TCI alleges Henry Billingsley promised to buy the property from the Trust and sell it to TCI (the Billingsley Oral Agreement), and in reliance, TCI gave up its efforts to extend its right to purchase the property under the Original Contract. Under the Billingsley Oral Agreement, TCI would pay Billingsley $1 million for an option to purchase the property from him in twelve months, for an option price of $7 million plus 16 percent interest over twelve months, plus any prorated property taxes. The Billingsley Oral Agreement is the basis for TCI's fraud and negligent misrepresentation claims against the Billingsley Defendants.

### STANDARD OF REVIEW

In three issues, TCI argues the trial court erred in granting summary judgment against TCI on its breach of contract and conspiracy claims against the Trust and its fraud and negligent misrepresentation claims against the Billingsley Defendants. In reviewing the trial court's decision to grant summary judgment, we apply well-known standards. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show the plaintiff has no cause of action. A defendant may meet this burden

by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *See Kang v. Hyundai Corp.*, 992 S.W.2d 499, 501 (Tex.App.-Dallas 1999, no pet.).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* Tex. R. Civ. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills*, 12 S.W.3d at 833. When analyzing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *Gen. Mills*, 12 S.W.3d at 833 (no-evidence summary judgment).

### Breach of Contract Claim Against the Trust

In its second issue, TCI alleges the trial court erred in granting the Trust's motion for summary judgment on TCI's breach of contract claim. Some additional facts are relevant to this claim. Under a "Reinstatement and Third Amendment to Contract" and two extensions, the closing date for sale of the property had been extended to April 28, 2003. TCI alleges that in April 2003, the parties negotiated for an extension of the closing date, and on April 25, the Trust Oral Agreement resulted from those negotiations. However, on April 29, 2003, the Trust's attorneys sent a letter to TCI confirming that the Original Contract had expired and was terminated.

On May 2, 2003, TCI and the Trust signed a "Reinstatement and Fourth Amendment" to the Original Contract. Under the fourth amendment, the closing date would be extended to May 15, 2003 for an additional earnest money deposit of $1.15 million, a sum substantially more than the amount of earnest money TCI had been required to pay under any of the previous amendments to the Original Contract. Nonetheless, there is no dispute TCI agreed to the fourth amendment and executed it. The fourth amendment required TCI to deposit the earnest money with the title company on or before 3 p.m. on May 2. If the additional earnest money was not deposited as required, the fourth amendment would be "null and void and the contract shall be deemed terminated . . . ." TCI did not pay the additional $1.15 million in earnest money. Although TCI delivered a check for that amount to the title company, the check did not arrive until approximately 3:45 p.m., forty-five minutes after the deadline.[2] The check was voided and returned to TCI's attorney on May 5, 2003. As a result, the fourth amendment was rendered null and void as

---

**2.** In addition, Phillips testified in his deposition that TCI "pulled" the check back after it was tendered:

> Q: And I think it's your testimony here today, after the earnest money check under

the fourth amendment was tendered to the title company, the plaintiff pulled it back; is that right?

A: That's correct.

of 3 p.m. on May 2, 2003, and the Original Contract was terminated.

Because the fourth amendment was rendered void by its own terms, TCI argues, the Trust Oral Agreement should control, and TCI should have been permitted to extend the closing date for $200,000. Specifically, in its second issue on appeal, TCI complains that the trial court erred in granting summary judgment on its breach of contract claim because (1) the merger clause in the Original Contract did not apply to the parties' subsequent Trust Oral Agreement, (2) the Trust Oral Agreement fell within an exception to the statute of frauds, (3) the fourth amendment to the contract was rendered null and void or, alternatively, is ambiguous on its terms, preventing the fourth amendment from being considered a final writing that would preclude giving legal effect to the Trust Oral Agreement, and (4) the trial court erred in denying leave to amend to allege the ambiguity of the fourth amendment.

■ As previously noted, the fourth amendment to the contract of sale became effective on May 2, 2003 and provided, in pertinent part, as follows:

[Trust] and [TCI] agree that the Contract is hereby amended as follows:

1. *Reinstatement of Contract.* By virtue of their execution of this Amendment, [Trust] and [TCI] hereby agree that the Contract is reinstated upon the same terms and conditions set forth therein, except as may be modified or amended in this Amendment.

2. *Earnest Money.* [TCI] will deposit prior to 3:00 p.m. C.S.T. on May 2, 2003 with the Title Company an additional $1,150,000.00 Earnest Money, which shall be deemed non-refundable, released directly to [Trust], and shall be applicable toward the Purchase Price at Closing

.... This shall bring the total non-refundable released Earnest Money deposit to $1,500,000.00. *If such additional Earnest Money is not deposited with the Title Company as herein required, then this Reinstatement and Fourth Amendment to Contract shall be null and void and the Contract shall be deemed terminated and [Trust] shall retain any and all Earnest Money deposits previously paid pursuant to the Contract without claim thereto by [TCI].* In such event, the parties shall be released from further obligations under the Contract except those, which pursuant to the terms of the Contract, survive the termination of the Contract. ...

4. *Closing Date.* The Closing Date as defined in Section 8(a) of the Contract shall be amended to on or before May 15, 2003. No further extensions shall be granted by [Trust] and [TCI] waives any right to request any additional extension.

(Emphasis added). The fourth amendment defines the term "Contract" to include the contract of sale effective May 1, 2002 and as amended by the first, second, and third amendments to the contract of sale.

■ TCI contends the Trust Oral Agreement of April 25 extended the closing date of the Original Contract for two weeks for an additional earnest money payment of $200,000. However, negotiations preceding a written contract should not displace the terms of the written contract. *Fisher Controls Int'l, Inc. v. Gibbons,* 911 S.W.2d 135, 141–42 (Tex.App.-Houston [1st Dist.] 1995, writ denied). The parties' execution of a written agreement, i.e., the fourth amendment in this case, presumes that all prior negotiations

and agreements related to the transaction have been merged into it. *Barker v. Roelke,* 105 S.W.3d 75, 83 (Tex.App.-Eastland 2003, pet. denied); *see also Smith v. Smith,* 794 S.W.2d 823, 827 (Tex.App.-Dallas 1990, no writ) ("[I]f the parties have integrated their agreement into a single written memorial, all prior negotiations and agreements with regard to the same subject matter are excluded from consideration whether they were oral or written."). The written agreement will not be added to, varied, or contradicted by parol evidence. *Barker,* 105 S.W.3d at 83. Therefore, the Trust Oral Agreement merged into the written May 2003 fourth amendment to the contract of sale. *Id.*

Under the rule stated in *Barker* and similar cases, the Trust Oral Agreement merged into the fourth amendment, and the fourth amendment became the controlling agreement between the parties. TCI does not allege any breach of the fourth amendment; its breach of contract claim is for breach of the Trust Oral Agreement. Therefore, there is no genuine issue of material fact precluding judgment on TCI's breach of contract claim against the Trust. Further, because we conclude there was a controlling written agreement between the parties, we need not consider TCI's additional arguments under its second issue regarding the merger clause in the Original Contract and whether the alleged Trust Oral Agreement falls within an exception to the statute of frauds.

Still, TCI argues that the fourth amendment to the contract of sale is ambiguous. TCI, however, first raised the defense of ambiguity when it filed the supplement to its third amended petition without seeking leave of court. The supplement was filed over seven months after the deadline for filing amended or supplemental pleadings to assert new defenses. Ultimately, TCI moved for leave to raise the ambiguity defense during the hearing regarding its motion for reconsideration on the Billingsley Defendants' motion for summary judgment. The trial court denied the motion for leave during the hearing, and later struck TCI's supplement to its third amended petition from the record.

■■■ We review a judge's refusal to consider an amended pleading under the abuse of discretion standard. *Clade v. Larsen,* 838 S.W.2d 277, 280 (Tex.App.-Dallas 1992, writ denied). We do not disturb the trial court's ruling unless the complaining party shows an abuse of discretion. *Id.* The trial court has discretion to refuse a late pleading if (1) the opposing party presents evidence of surprise or prejudice or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. *See id.* The Trust argues the trial judge did not abuse her discretion in refusing the supplemental pleading.

The Trust further contends that even if the trial judge erred in refusing the pleading, there was no harm because the fourth amendment was not ambiguous as a matter of law. *See* Tex. R. App. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment ..."). TCI counters, "there is an ambiguity regarding the parties' intentions in the event that the earnest money was not paid, and whether the merger provisions and other exculpatory provisions in the original agreement and in the Fourth Amendment are applicable as alleged by the Trust." We agree with the Trust that the fourth amendment is not ambiguous.

■■ If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is

not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). TCI points to Phillips' affidavit testimony of his intent in entering into the fourth amendment, "to preserve [TCI's] legal rights as they existed prior to the execution" of the fourth amendment. TCI argues that by not paying the earnest money under the fourth amendment, it intended to return to and enforce the Trust Oral Agreement, and the fourth amendment is at least ambiguous as to the effect of failing to pay the earnest money. We disagree. The fourth amendment unambiguously states:

> WHEREAS, the Contract terminated on its own terms as a result of the failure of Purchaser to consummate the Contract
>
> . . .
>
> NOW, THEREFORE, . . . By virtue of their execution of this Amendment, Seller and Buyer hereby agree that the Contract is reinstated . . .
>
> If such additional Earnest Money is not deposited with the Title Company as herein required, then this Reinstatement and Fourth Amendment to Contract shall be null and void and the Contract shall be deemed terminated and Seller shall retain any and all Earnest Money deposits previously paid pursuant to the Contract without claim thereto by Purchaser. In such event, the parties shall be released from further obligations under the Contract except those, which pursuant to the terms of the Contract, survive the termination of the Contract.

The fourth amendment is clear the Original Contract had terminated, and the parties agreed to reinstate it. As we have concluded above, the parties' execution of the fourth amendment presumes that all prior negotiations and agreements related to the transaction have been merged into it. *See Barker,* 105 S.W.3d at 83. There

is nothing in the language of the fourth amendment about preserving legal rights under any prior oral agreement. Similarly, the consequence of failing to pay the additional earnest money is clear: "the Contract shall be deemed terminated." There is no language or clause indicating the terms of the Trust Oral Agreement, or similar terms by which TCI could extend the Original Contract for a different time period or a lesser amount of earnest money, would control. There is no fact issue regarding whether TCI entered into the fourth amendment, and the terms of the amendment are unambiguous. Even if the trial judge erred in refusing TCI's supplemental pleading, we conclude the error did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1.

In sum, the record before us demonstrates that TCI failed to deposit an additional $1,150,000 in earnest money as required by the fourth amendment. Therefore, under its own terms, the fourth amendment became null and void, thereby terminating the contract of sale between TCI and the Trust. The Trust was thus entitled to retain the earnest money already deposited by TCI. The Trust has proven as a matter of law that it did not breach the contract and, therefore, the trial court properly granted summary judgment in favor of the Trust. *Gen. Mills,* 12 S.W.3d at 832. We overrule TCI's second issue.

### FRAUD CLAIMS AGAINST BILLINGSLEY DEFENDANTS

In its first issue, TCI argues the trial judge erred in granting summary judgment for the Billingsley Defendants on TCI's fraud and negligent misrepresentation claims. As noted above, these claims are based on the Billingsley Oral Agreement, Henry Billingsley's alleged promise to buy the property and sell it to TCI. In

its third amended original petition, TCI alleged fraud and negligent misrepresentation claims against the Billingsley Defendants arising out of the Billingsley Oral Agreement: "As described above, Billingsley represented to TCI that it would acquire the Property from the Trust and sell it back to TCI." TCI alleged the representation was material, and, "in reliance thereupon, TCI did not exercise its rights to acquire the Property." TCI further alleged Billingsley made the representations "with no intent to honor them."

In their second amended answer, the Billingsley Defendants pleaded that TCI's claims were barred in whole or in part by the statute of frauds, and moved for summary judgment alleging the statute of frauds barred TCI's claims seeking benefit-of-the-bargain damages. Statutes of frauds generally require that certain specified classes of contracts be in writing to be enforceable. *See, e.g., Gerstacker v. Blum Consulting Eng'rs, Inc.,* 884 S.W.2d 845, 849 (Tex.App.-Dallas 1994, writ denied); *see also* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4) (Vernon Supp. 2008) (contract for sale of real estate not enforceable unless promise or agreement, or memorandum of it, is in writing and signed by person to be charged with promise or agreement).

In their motion for summary judgment, the Billingsley Defendants asserted the statute of frauds barred TCI's claims seeking benefit of the bargain damages. The Billingsley Defendants also moved for summary judgment on the ground that there was no evidence of any out-of-pocket loss suffered by TCI in reliance on the Billingsley Oral Agreement. TCI argues its damages are reliance damages, not damages seeking the benefit of the bargain, and are therefore recoverable under its claims for fraud and negligent misrepresentation.

The statute of frauds bars a fraud claim for benefit-of-the-bargain damages. *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex.2001). The *Haase* court explained:

> If in the face of the Statute of Frauds we permit Glazner's fraud claim to the extent he seeks to recover the benefit of the unenforceable bargain, we deprive the Statute of any effect. The Statute exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties. [Footnote omitted]. But that purpose is frustrated and the Statute easily circumvented if a party can use a fraud claim essentially to enforce a contract the Statute makes unenforceable.

Similarly, a claim of negligent misrepresentation may not be used to circumvent the statute of frauds. *See Fed. Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). The statute of frauds does not bar the recovery of out-of-pocket damages for fraud, however. *Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 636 (Tex.2007).

TCI first argues the Billingsley Defendants did not assert in their motion for summary judgment that TCI could not prove reliance damages as a matter of law; rather, TCI argues this issue was not raised until the Billingsley Defendants filed a reply on the day of the hearing. We disagree. Both the first and third "summary judgment grounds" in the Billingsley Defendants' motion[3] gave fair no-

3. The first and third "summary judgment grounds" in the Billingsley Defendants' motion were as follows:

1. As a matter of law, the statute of frauds bars all of TCI's claims against the Billings-

tice to TCI that judgment was sought on the ground that TCI could not recover the damages it sought as a matter of law. *See Seaway Prods. Pipeline Co. v. Hanley,* 153 S.W.3d 643, 649 (Tex.App.-Fort Worth 2004, no pet.) (specificity requirement of summary judgment rule satisfied if grounds in motion give "fair notice" to nonmovant).

 TCI next argues it did not judicially admit it was seeking only benefit-of-the-bargain damages. In its summary judgment response to the Billingsley Defendants' motion, TCI stated:

24. The summary judgment evidence establishes that TCI relied upon Billingsley's promise and did not reinstate the Contract as was its right. As a result, TCI has both lost all earnest money which it paid to the Trust, as well as the ability to acquire the Property from Billingsley at the agreed upon price.[27]

n. 27. In their motion for summary judgment, the Billingsley Defendants assert as grounds that "there is no evidence of detrimental reliance or any out-of-pocket loss suffered by TCI." *TCI does not assert out-of-pocket losses; rather, TCI asserts benefit of the bargain damages and specific performance.* TCI does not interpret this "no evidence" ground asserted by the Billingsley Defendants as alleging that there was not evidence of the benefit of the bargain damages, only that there was not evidence as to detrimental reliance. However, to the extent the Billingsley [Defendants] attempt to construe its request for summary judgment as asserting that there is also no evidence of benefit of the bargain damages,

ley Defendants for benefit of the bargain damages and recovery of the Lupton Tract. 3. TCI cannot recover reliance damages because there is no evidence of detrimental

... [TCI moves the court for an extension of time to file an expert report]. In addition, for purposes of this motion, "benefit of the bargain" damages are reflected in the transaction. The "fair market value" of property "is defined as the price a willing buyer would pay to a willing seller." *Nelson v. Najm,* 127 S.W.3d 170, 177 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The summary judgment evidence establishes that the Trust was willing to sell and TCI was willing to buy the Property for $9,000,000. Under the agreement with Billingsley, TCI could have acquired the property for $1,000,000 down, $7,000,000 in 12 months, and a forfeiture of the $350,000 earnest money. Thus, the "benefit of the bargain" is at least $650,000, less any present value discounts.

(Emphasis added.)

 To constitute a judicial admission, a party's statement must meet several requirements: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Sherman v. Merit Office Portfolio, Ltd.,* 106 S.W.3d 135, 140 (Tex.App.-Dallas 2003, pet. denied). A statement made in a party's summary judgment response is made during the course of a judicial proceeding. *See Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex.2001) (judicial admission of accrual date made in summary judgment response and counter-

reliance or any out-of-pocket loss suffered by TCI *after* the alleged oral promise by the Billingsley Defendants.

motion). TCI's statement that it does not assert out-of-pocket losses is contrary to its only available theory of recovery because the agreement it relies upon does not comply with the statute of frauds. *See Haase,* 62 S.W.3d at 799 (plaintiff cannot recover benefit of bargain damages where agreement fails to comply with statute of frauds). The statement is also deliberate, clear, and unequivocal. While TCI requests additional time to obtain expert testimony regarding the amount of damages, it is clear TCI is requesting a particular type of damages; that is, the loss of a bargain, not expenses TCI has incurred. Giving effect to the statement would also be consistent with public policy, because under the statute of frauds and the estoppel TCI claims, TCI may recover only reliance damages. *See Haase,* 62 S.W.3d at 799 (statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties). Finally, giving effect to the statement is not destructive of any theory of recovery relied on by the Billingsley Defendants.

■ Even if TCI did not make a judicial admission in its summary judgment response, however, its own description of the damages it seeks makes clear it cannot recover those amounts as a matter of law. TCI argues the summary judgment evidence establishes TCI suffered damage in reliance on the Billingsley Oral Agreement, and maintains its claim for damages was mischaracterized in the trial court. It argues it seeks the benefit of its bargain with the Trust, not the benefit of its bargain with the Billingsley Defendants. TCI states, "in reliance on Billingsley's promise, [TCI] gave up $350,000 in earnest money as well as its contractual rights to acquire the property." However, the benefit TCI seeks under both its contract

claim against the Trust and its fraud claim against the Billingsley Defendants is the same, that is, the right to purchase the property at a specific price within a specific time period, or the monetary value of that right. The damages TCI seeks are premised on the assertion that the promises of both the Trust (in the Original Contract and the Trust Oral Agreement) and of Billingsley (in the Billingsley Oral Agreement) should be enforced so that TCI may purchase the property or recover its value. These are benefit-of-the-bargain damages. *See Sonnichsen,* 221 S.W.3d at 636–37 (where entitlement to claimed benefits only arose if alleged contract enforced, damages sought were benefit-of-the-bargain).

■ As we have noted, the inquiry is whether the plaintiff seeks to recover the benefit of the alleged false representations, or its out-of-pocket costs expended in reliance on those representations. *Case Corp. v. Hi–Class Business Systems of America, Inc.,* 184 S.W.3d 760, 778 (Tex.App.-Dallas 2005, pet. denied). Where the statute of frauds bars enforcement of the representations, only out-of-pocket costs are recoverable. *Id.* TCI correctly notes the out-of-pocket measure consists of the difference between the value "parted with" and the value received, while the benefit-of-the-bargain measure consists of the difference between the value of the bargain as represented and the value received. *See, e.g., id.* at 777. TCI argues it parted with its rights under its contract with the Trust, and therefore seeks only recoverable reliance damages. The out-of-pocket measure, however, "only compensates for actual injuries a party sustains through parting with something, not loss of profits on a bid not made, and a profit never realized, in a hypothetical bargain never struck." *Id.* at 779 (quoting *Formosa Plastics Corp. USA v. Presidio Engrs. & Contractors, Inc.,* 960

S.W.2d 41, 49–50 (Tex.1998)). While the calculation of damages would be slightly different based upon the different purchase prices under the Billingsley Oral Agreement and the Original Contract with the Trust, the measure of damages TCI seeks to recover is what it would have gained had it been able to purchase the property. These are benefit-of-the-bargain damages; therefore, TCI's fraud claim fails. *See Sonnichsen,* 221 S.W.3d at 637 ("Because these benefit-of-the-bargain damages are the same damages Sonnichsen sought to recover under an unenforceable contract, his fraud claim fails."); *see also Biko v. Siemens Corp.,* 246 S.W.3d 148, 163 (Tex.App.-Dallas 2007, pet. denied) ("Because we view appellants' fraud claims as artfully pleaded claims for breach of contract, we follow *Haase* and *Sonnichsen* and overrule appellants' second issue."); *and D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663 (Tex.1998)(per curiam) (benefit of bargain measure of damages not available for claim of negligent misrepresentation).

TCI does not dispute that the statute of frauds would normally require the Billingsley Oral Agreement to be in writing to be enforceable. In its summary judgment response, however, TCI argued the statute of frauds does not apply, because the Billingsley Defendants are es-

topped from relying on the statute of frauds to avoid their promise.[4] In some circumstances, equitable or promissory estoppel may be used to bar the application of the statute of frauds to allow enforcement of an otherwise unenforceable oral promise. *See, e.g., Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex.1982) (citing *Moore Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 940 (Tex.1972) (op. on reh'g), explaining that promissory estoppel exception to statute of frauds applies only to cases where oral promise was "to sign a written agreement which itself complies with the Statute of Frauds"); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991) (setting out elements of equitable estoppel). On summary judgment, TCI bore the burden of raising a fact issue as to promissory or equitable estoppel. *See Leach v. Conoco, Inc.,* 892 S.W.2d 954, 959 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.) (when defendant's motion for summary judgment establishes applicability of statute of frauds as matter of law, defendant does not have further burden to negate plaintiff's claim of estoppel; instead, plaintiff has burden to raise fact issue as to estoppel defense).

TCI's counter-defenses of promissory and equitable estoppel do not alter our conclusion that TCI's fraud claim fails as a matter of law. TCI asserts Billingsley is estopped from asserting the statute of

4. Although the Billingsley Defendants argue TCI failed to timely plead estoppel, the trial judge overruled the Billingsley Defendants' objection to TCI's assertion of estoppel in its Third Amended Petition, stating at the hearing on the Billingsley Defendants' summary judgment motion, "I'm going to allow the pleading." The trial judge noted the Billingsley Defendants were required to show surprise or prejudice, and concluded, "It falls within the case law and within the time frame allowed." As noted above, the trial judge has discretion to refuse a late pleading if the opposing party shows surprise or prejudice, *see Clade,* 838 S.W.2d at 280, and here, the trial judge concluded surprise or prejudice had not been shown. The Billingsley Defendants' motion for summary judgment addressed the estoppel defenses. The trial judge acted within her discretion in allowing the pleading. *See id.* (no abuse of discretion to refuse pleading asserting new causes of action). While the Billingsley Defendants argue the trial judge "immediately retracted" this ruling by stating, "I'm going to take this under advisement for a couple of hours," the record reflects, as TCI argues, that the matter under advisement was the summary judgment motion.

frauds applies to bar recovery on the Billingsley Oral Agreement because TCI relied to its detriment on Billingsley's misrepresentations. The supreme court has commented on the defensive use of promissory estoppel:

> But we have long recognized in other contexts the defensive theory of promissory estoppel. When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement. Promissory estoppel does not create liability where none otherwise exists, but "prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them."

*In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex.2005) (footnotes omitted).

■■■ There are numerous cases discussing estoppel as a counter-defense where the statute of frauds would otherwise apply to bar enforcement of a contract. *See, e.g., Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 437–39 (Tex.App.-Dallas 2002, pet. denied) (discussing application of promissory estoppel to allow enforcement of agreement otherwise unenforceable under statute of frauds). If the elements of promissory or equitable estoppel are met, then a promisee may enforce an otherwise unenforceable contract. *See id.* The damages recoverable, however, are limited to reliance damages. *Fretz Constr. Co. v. Southern Nat. Bank of Houston*, 626 S.W.2d 478, 483 (Tex.1981) (damages recoverable in case of promissory estoppel are not profit that promisee expected, but only amount necessary to restore him to position he would have been in had he not acted in reliance on the promise); *see also Wheeler v. White*, 398 S.W.2d 93, 97 (Tex.1965) ("Since the promisee in such cases is partially responsible for his failure to bind the promisor

to a legally sufficient contract, it is reasonable to conclude that all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise.").

■■■ For its counter-defenses of estoppel, TCI cites to the same evidence that is the basis for its fraud claim, the Billingsley Oral Agreement to acquire the property and then sell it to TCI, and for its promissory estoppel claim, Billingsley's alleged additional promise to sign a written agreement reflecting the agreed-upon terms. *See Nagle*, 633 S.W.2d at 800 (promissory estoppel exception to statute of frauds applies only where promise was to sign written agreement which itself complies with statute of frauds). As noted above, TCI seeks damages for the benefit of its alleged bargain with Billingsley, the value of the property. Even if TCI established its estoppel counter-defenses as a matter of law, those defenses would preclude application of the statute of frauds and allow enforcement of the oral promise only to the extent of TCI's damages suffered in reliance on the promise. As stated in *Wheeler*, "[w]here the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover *no more than* reliance damages measured by the detriment sustained." *Wheeler*, 398 S.W.2d at 97 (emphasis added). Because TCI does not seek reliance damages here, its estoppel counter-defenses do not preclude judgment as a matter of law on its claims against the Billingsley Defendants. We overrule TCI's first issue.

### CONSPIRACY CLAIM

■■■ In its third issue, TCI asserts the trial judge erred in granting summary

judgment to the Trust on TCI's conspiracy claim. Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, is a derivative tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 856 (Tex.1968); *Preston Gate, LP v. Bukaty,* 248 S.W.3d 892, 898 (Tex.App.-Dallas 2008, no pet.). In other words, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Tilton,* 925 S.W.2d at 681. Because judgment was proper on TCI's underlying claims against the Trust and the Billingsley Defendants, it was proper on TCI's conspiracy claim as a matter of law. *See id.; see also RTLC AG Products, Inc. v. Treatment Equip. Corp.,* 195 S.W.3d 824, 833 (Tex.App.-Dallas 2006, no pet.) (summary judgment proper on conspiracy claim where no evidence of underlying antitrust claim). We overrule TCI's third issue.

We affirm the trial court's judgment.[5]

---

**5.** The trial court's judgment includes awards of attorneys' fees based on stipulations among the parties. TCI did not address a specific issue on appeal to the attorneys' fees awards. In its briefs, it argued the Trust and the Billingsley Defendants should not be awarded attorneys' fees because genuine issues of material fact precluded judgment in favor of those parties. Because we conclude there are no genuine issues of material fact precluding judgment in favor of the Trust and the Billingsley Defendants, we affirm the trial court's award of attorneys' fees in the judgment.