**Affirmed in part; Reversed and Remanded in part and Opinion Filed February 2, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00040-CV**

**MATTHEW BOSWELL, Appellant**
**V.**
**PAPPY'S PET LODGE GROUP, LLC,**
**PAPPY'S FRANCHISING, LLC, AND WILLIAM KINDER, Appellees**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-02877-2021**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Breedlove

In this suit arising from a written agreement, the trial court granted summary judgment for appellees Pappy's Pet Lodge Group, LLC, Pappy's Franchising, LLC, and William J. Kinder. In four issues, appellant Matthew Boswell contends the trial court erred because he raised genuine issues of material fact on his claims for breach of contract, fraud, fraud by nondisclosure, and promissory estoppel. He also argues he raised fact issues regarding limitations, waiver, performance of the contract, and

repudiation. We affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

On September 27, 2011, appellant Matthew "Red" Boswell as "Franchise Consultant" and appellee William "Bill" Kinder as "Pappy's Pet Lodge Owner" signed a contract "for Red to handle Pappy's franchise opportunity analysis, construction and optimization."[1] The terms, drafted by Boswell, were as follows:

- Either party can end the relationship at any time

- I [Boswell] report back to Bill every week to go over the past week's results and the coming week's focus

- Paid bi-weekly in advance (or whatever frequency Bill prefers)

- Travel and other standard misc expenses would be reimbursed bi-weekly at 50 cents per mile . . .

- Compensation:

    o $30 per hour up to 20 hours per week. Bill can change this weekly max at any time. 20 hours x 2 weeks + 30 miles = $600 x 2 +15 = 1,215.00

    o In exchange for this 92% rate reduction off of my standard hourly rate, I receive .0125 (1.25%) of franchised locations gross revenue per month

    o Once Pappy's sells 10 or more locations that percentage would bump to 1.67%

    o Once Pappy's sells 50 it would bump to 2%

---

[1] Boswell refers to the agreement as the "Franchise Consulting Agreement" or FCA; we will do so as well.

- If we never launch or never sell at least 6 franchises (for $20k or more each) then if/when Pappy's majority ownership changes hands I would receive reimbursement compensation for the hours that I have worked simply computed at the difference between $250/hr (my standard rate) and $30/hr (the drastically reduced rate for this project) less $100 (my punishment for not creating a more attractive opportunity). Each week's hours approved in advance by Bill. So, $120 per hour is the "Worst Case Scenario" reimbursement amount. Example: 200 hrs at $120 = $24,000 at majority ownership transfer closing table.

- I would be responsible for creating and paying for formalized agreement which would be delivered to Bill once this project is well under way.

- Checks made payable to Matt Boswell

- This written agreement is exactly what we verbally agreed to on the phone one week ago. No details have been left out. I have already invested 10 hours into this project and will now begin investing up to 20 more per week into it until told otherwise by Bill in writing (email is fine).

The parties agree that Pappy's Pet Lodge Group paid Boswell a total of $2,962.50 on the FCA between September 2011 and April 2012, and that no further amounts are due for Boswell's services during that time period. The parties also agree that Boswell stopped providing services under the FCA after April 2012, because Kinder told Boswell that Pappy's was not going to pursue its plans to franchise the business. The parties disagree about the content and effect of the conversation, however. Kinder testified that "we stopped"; "we were going to extinguish" Boswell's relationship with Pappy's "and move on." Boswell acknowledged that Kinder told him that Pappy's was "not going to be franchising

now." But Boswell testified he understood this to mean that only the hourly work would stop: "He had me stop my hourly working. But the agreement was in no way terminated."

In 2019, Boswell learned that at least one Pappy's franchise had been sold two years earlier. Boswell demanded royalties under the FCA, and filed this suit in 2021 when he did not receive them. In his operative petition, Boswell alleged claims against Pappy's Pet Lodge Group, LLC, Pappy's Franchising, LLC, and Kinder for breach of the FCA, fraud, fraud by nondisclosure, and promissory estoppel.

The defendants (together, "Pappy's") answered and asserted numerous affirmative defenses. Pappy's then filed traditional and no-evidence motions for summary judgment on all of Boswell's claims. In its no-evidence motion, Pappy's alleged:

- For Boswell's breach of contract claim, there was no evidence that Boswell performed or tendered performance, no evidence of a breach by Pappy's, and no evidence of damages as a result of any breach;

- For Boswell's fraud claim, there was no duty to disclose the opening of any franchise or the gross monthly revenues from any franchise; and

- For Boswell's claim of fraud by nondisclosure, there was no fiduciary or other relationship between the parties.

In its traditional motion, Pappy's alleged:

- Pappy's alleged breach occurred after the FCA's termination, so there "is no valid, enforceable contract on which Plaintiff can sue";

- If the FCA was not terminated, Boswell committed a prior material breach by failing to provide consulting services after 2012;

- If the FCA was not terminated, Boswell's breach of contract claim is barred by the four-year statute of limitations;

- Pappy's is entitled to summary judgment on its affirmative defenses of repudiation/prior material breach and waiver;

- Boswell's fraud and fraudulent inducement claims are not viable in light of his breach of contract claim;

- Boswell's promissory estoppel claim is barred under the express contract doctrine and by the four-year statute of limitations.

The trial court granted Pappy's motions in their entirety and rendered judgment. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

Boswell challenges the trial court's summary judgment in four issues. In his first issue, he contends he produced sufficient evidence to raise a fact issue precluding summary judgment on his breach of contract claim. In his second and third issues, he contends he produced sufficient evidence to raise fact issues on his fraud, fraud by nondisclosure, and promissory estoppel claims in response to appellees' traditional and no-evidence motions. In his fourth issue, he contends he raised genuine issues of material fact regarding whether the parties terminated the FCA, his performance, limitations, and the absence of any repudiation, waiver, or material breach.

We review an order granting summary judgment de novo. *Durham v. Children's Med. Ctr. of Dallas*, 488 S.W.3d 485, 489 (Tex. App.—Dallas 2016, pet. denied). When we review a traditional summary judgment in favor of a defendant,

we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Alexander v. Wilmington Sav. Fund Soc'y*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id.* A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.* When, as in this case, the summary judgment does not specify the grounds on which it was granted, we affirm if any ground advanced in the motion is meritorious. *See id.*

When both no-evidence and traditional summary judgment motions are filed, we generally address the no-evidence motion first. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004). If the challenge to the order granting the no-evidence summary judgment motion fails, we need not also consider the traditional motion. *See id.*

A movant is entitled to a no-evidence summary judgment if, "[a]fter adequate time for discovery . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The trial court "must grant" the motion unless the non-movant produces summary judgment evidence to raise a genuine issue of material fact on the issues the movant raised. *Id.* "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element

is produced." *Ford Motor Co.,* 135 S.W.3d at 600. "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation omitted).

A party moving for traditional summary judgment has the burden of establishing that no material fact issue exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

## DISCUSSION

We first address Boswell's first and fourth issues that challenge the trial court's judgment on his contract claims. We then turn to Boswell's second and third issues that challenge the trial court's judgment on his fraud and promissory estoppel claims.

## 1. Contract issues

### A. No-evidence motion on performance, breach, and damages

"A successful breach of contract claim requires proof of the following elements: (1) a valid contract; (2) performance or tendered performance by the

plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach." *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.). Pappy's no-evidence motion for summary judgment challenged (1) whether Boswell performed or tendered performance, (2) whether Pappy's breached the FCA, and (3) whether Boswell was damaged by the breach. We conclude that genuine issues of material fact exist on each of these matters. *See* TEX. R. CIV. P. 166a(c).

Regarding Boswell's performance, the summary judgment evidence reflects the parties' disagreement about what services Boswell was required to perform under the FCA. The FCA states only that Boswell will "handle Pappy's franchise opportunity analysis, construction and optimization." Kinder testified that Boswell was required to "sell franchises," while Boswell testified to his understanding that he, personally, did not have to sell any franchises under the agreement in order to receive the designated percentages of gross revenue from the franchised locations. Further, although the FCA required Boswell to create and pay for a "formalized agreement," Boswell testified he did not do so because Kinder told him it was not necessary until "later when it comes time to sell." The evidence shows that Boswell did provide some services under the FCA, was paid for them, and stopped his hourly work at Kinder's request. We conclude Boswell raised a genuine issue of material fact regarding his performance. *See Petras*, 248 S.W.3d at 477.

Regarding Pappy's breach, it is undisputed that Pappy's did not pay compensation to Boswell when it sold franchises. Pappy's argues the FCA was terminated years before any franchises were sold, and the FCA provides that "[e]ither party can end the relationship at any time." Pappy's concludes it owed nothing more to Boswell under the FCA. Boswell, however, testified that the "relationship" meant only "[t]he hourly relationship, the consulting hourly." Boswell thus argues that "the key term in the FCA, the 'relationship' between the Parties is not defined and thus subject to interpretation." Boswell also contends that a fact issue exists "as to whether the FCA was paused, as Boswell claims, or terminated, as Appellees claim." The parties offered conflicting testimony on this point, and the summary judgment record does not include contemporaneous documents to support either party's understanding. The FCA did not include any time limit for the parties to carry out their responsibilities. We conclude Boswell raised a genuine issue of material fact whether Pappy's breached the FCA. *See Petras*, 248 S.W.3d at 477.

Regarding damages, the undisputed evidence shows that after Boswell and Kinder signed the FCA, Pappy's received and paid for Boswell's services at the discounted rate under the FCA. It is also undisputed that Pappy's "sold at least two franchises," as Boswell alleged in his operative petition, but did not pay any commission to Boswell. We conclude Boswell raised a genuine issue of material fact whether he suffered damages from Pappy's alleged breach of the FCA.

Because Boswell raised genuine issues of material fact on his claim for breach of contract, we conclude the trial court erred by granting Pappy's no-evidence motion for summary judgment on this claim. We sustain Boswell's first issue.

### B.    Limitations, repudiation, and waiver

In its traditional motion, Pappy's sought summary judgment on its affirmative defenses of repudiation/prior material breach, waiver, and limitations, and contended that because the alleged breach occurred after the FCA's termination, there was no valid, enforceable contract on which Boswell could sue. These defenses are premised on Boswell's inaction between 2012, when he ceased providing services to Pappy's, and 2019, when he learned that Pappy's had sold a franchise. In his fourth issue, Boswell contends he raised genuine issues of material fact regarding his performance of his contractual obligations, the FCA's termination and limitations, and the absence of any repudiation, waiver, or material breach.

We first conclude that Boswell raised a genuine issue of material fact on whether his claims are barred by limitations. There is no term or expiration date stated in the FCA, and the parties offered conflicting evidence about the date on which limitations began to run.

Pappy's argues limitations began to run in 2012 when it contends is when the FCA was terminated. Kinder testified that in 2012, he and Boswell "agreed that we wouldn't go forward." Kinder explained that "we were not even close to being able

to do franchising at that time," and "the whole purpose of [Boswell's] existence in our world was to sell franchises. That wasn't happening, and so we stopped."

Boswell, in contrast, argues that limitations did not begin to run until Pappy's failed to pay his monthly commissions after it sold a franchise, which he contends was in breach of the FCA. Boswell testified that under the FCA, he was not required to sell franchises. He testified that the FCA has never been terminated; that although Kinder "had me stop my hourly working," "the agreement was in no way terminated." He testified that his obligation under the FCA to "report back to Bill every week" was no longer in effect, but the FCA and the obligation to pay him when Pappy's sold franchises remained in effect.[2] Although Boswell concedes he did not provide any services under the FCA after 2012, he argues he raised a genuine issue of material fact on whether limitations bars some or all of his claims. We agree.

At trial, if Boswell carries his burden to prove that the FCA required Pappy's to pay him compensation when the franchises were sold—a question not presented in this appeal—then his suit filed on June 1, 2021, was within four years of at least some of the monthly payments due. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (four-year limitations period for actions for debt). "When recovery is sought on an obligation payable in installments, a separate cause of action accrues for each missed payment and a separate limitations period runs against each

---

[2] Boswell also argues that in any event, termination of the FCA would not affect his claim for "reimbursement compensation" for the work he performed.

–11–

installment from the time it becomes due." *Barnes v. LPP Mortg., Ltd.* 358 S.W.3d 301, 307 (Tex. App.—Dallas 2011, pet. denied). Accordingly, we conclude that Boswell raised a genuine issue of material fact on Pappy's limitations defense.

Turning to Pappy's contentions that Boswell's claims are barred by prior material breach, repudiation, and waiver, Pappy's argued in its summary judgment motion that "Boswell did not even contact Kinder, much less perform as a consultant or sell franchises, for more than seven years." Pappy's argued that Boswell did not sell either of Pappy's two franchises, did not fulfill his obligation to create and pay for a formalized agreement, and failed to report to Kinder on a weekly basis as the FCA required. Pappy's also contended that "if Boswell ever had the right to claim the commission component of his compensation after April 2012, Boswell's conduct shows the intentional relinquishment of that right" by his failure to contact Kinder for almost seven years, lack of "effort to keep up with Defendants or even learn if Defendants had opened any franchise locations," and failure "to retain any proof of the hours he had worked for Defendants." Pappy's argued that this conduct demonstrated Boswell's "actual belief that the Agreement had in fact been mutually terminated and was no longer in force, or alternatively demonstrating his intentional relinquishment of any right to claim commissions" or other compensation under the FCA.

Boswell, however, testified that his inactivity under the FCA was in compliance with a request from Kinder. In his summary judgment response, Boswell

argued that he "quickly demanded Kinder abide by the terms of the [FCA] after learning of its breach, repeatedly ask[ing] Kinder to reconsider and do the right thing," and only filed suit "as a last resort." Boswell also contended that Pappy's evidence of his alleged prior breaches of the FCA only raised fact questions that could not be resolved by summary judgment.

Concluding that Boswell raised genuine issues of material fact on Pappy's affirmative defenses to Boswell's claim for breach of contract, we sustain Boswell's fourth issue.

## 2. Promissory estoppel and fraud claims

Boswell's second and third issues challenge the trial court's summary judgment on his promissory estoppel and fraud claims.

### A. Promissory estoppel

For his claim of promissory estoppel, Boswell pleaded that Pappy's promised to pay royalties, he relied on that promise, Pappy's knew or should have known of his reliance, and he provided over 100 hours of work in reliance on the promise. Pappy's sought summary judgment on the ground that the "alleged breach is covered by an express contract."

We conclude the trial court did not err by granting summary judgment for Pappy's on this claim. *See Guar. Bank v. Lone Star Life Ins. Co.*, 568 S.W.2d 431, 434 (Tex. App.—Dallas 1978, writ ref'd n.r.e.) ("If the promise in question is a part of a valid contract, the promisee cannot disregard the contract and sue for reliance

–13–

damage under the doctrine of promissory estoppel."). Further, Boswell's promissory estoppel claim is barred by the economic loss rule. "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). As damages for his promissory estoppel claim, Boswell pleaded only for "the accrual of royalties owed to Plaintiff." Boswell's claim to these royalties arises only from the FCA. Accordingly, we overrule this portion of Boswell's second and third issues.

### B. Fraud and fraud by non-disclosure

Further, we affirm the summary judgment on Boswell's common law fraud and fraud by non-disclosure claims because the damages Boswell seeks are amounts he claims are due under the FTA. *See Transcontinental Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635, 647 (Tex. App.—Dallas 2009, no pet.) (where plaintiff sought benefit-of-the-bargain damages, its fraud claim failed as a matter of law). In his operative petition, Boswell alleged that "Defendants promised Plaintiff that they would pay Plaintiff a royalty amount based on the monthly gross revenue for each franchised location," and described his injury as "Defendants' refusal to pay Plaintiff royalties accruing [or] otherwise owing to Plaintiff." Accordingly, Boswell's fraud and fraud by non-disclosure claims fail. *See id.*

## C. Fraudulent inducement

Boswell's fraudulent inducement claim is different. Pappy's moved for summary judgment only on the ground that the fraudulent inducement claim is "not viable in light of Plaintiff's breach of contract claim." However, "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1997). "A party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc.*, 445 S.W.3d at 718.

In his summary judgment response, Boswell cited Kinder's testimony that Pappy's never intended to perform under the FCA. Kinder testified that the FCA was "onerous" and "we would never accept . . . in a legal document" the paragraph awarding Boswell 1.25 percent of franchised locations' gross revenue per month. Kinder explained that "[o]ur intent was to get a fully negotiated contract of employment" with Boswell as a director of franchising on a commission basis, but "[w]e never got that far." Boswell argued that Pappy's "intention all along was to renegotiate the [FCA] and deprive [Boswell] of the benefit of this bargain." We conclude that Pappy's did not establish its right to judgment as a matter of law on Boswell's fraudulent inducement claim. *See id.*; *see also Fuller v. Le Brun*, 616 S.W.3d 31, 44–45 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (fraudulent

–15–

inducement claim was not barred by the economic loss rule where the claim arose from misrepresentations made before the parties entered into their contract).

**D. Conclusion on fraud and estoppel issues**

We sustain the portion of Boswell's second and third issues that challenge the trial court's summary judgment on his fraudulent inducement claim. In all other respects, we overrule Boswell's second and third issues.

CONCLUSION

We affirm the trial court's judgment in part, reverse in part, and remand the case to the trial court for resolution of Boswell's claims for breach of contract and fraud in the inducement.

230040f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MATTHEW BOSWELL, Appellant

No. 05-23-00040-CV     V.

PAPPY'S PET LODGE GROUP, LLC, PAPPY'S FRANCHISING, LLC, AND WILLIAM KINDER, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-02877-2021.
Opinion delivered by Justice Breedlove. Justices Carlyle and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment granting summary judgment on appellant Matthew Boswell's claims for breach of contract and fraud in the inducement. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 2nd day of February, 2024.